179 N.J. Super. 465 (1981)
432 A.2d 556
P. AND HUSBAND, PLAINTIFFS-APPELLANTS,
v.
RONALD PORTADIN, M.D., AND THE VINELAND OBSTETRICAL AND GYNECOLOGICAL ASSOCIATION, DEFENDANTS-RESPONDENTS, AND NEWCOMB HOSPITAL, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 9, 1981.
Decided June 24, 1981.
*467 Before Judges MICHELS, KOLE and ARD.
Kotok & Kotok, attorneys for appellants (Lester Kotok of counsel; Howard D. Melnicove on the brief).
Horn, Kaplan, Goldberg & Gorny, attorneys for respondents (Leonard C. Horn of counsel; Wayne R. Rosenlicht on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Pursuant to leave of this court, plaintiffs Mr. & Mrs. P. appeal from an order of the Law Division entered in favor of defendants *468 Ronald Portadin, M.D. and the Vineland Obstetrical and Gynecological Association (Vineland), dismissing "[a]ny and all claims for medical expenses and future child rearing expenses" and "leaving as the only issue with respect to damages the emotional distress of the parents."
Plaintiffs instituted this medical malpractice action against defendants, claiming that Dr. Portadin, an employee of both Vineland and defendant Newcomb Hospital, advised Mrs. P. to undergo a sterilization procedure; that Dr. Portadin obtained her consent to perform a particular kind of procedure (tubal ligation), but that he willfully performed another procedure (fallopian rings) without her consent, and, finally, that Dr. Portadin performed the unauthorized procedure negligently. They claim that as a result of Dr. Portadin's malpractice Mrs. P. became pregnant and gave birth to a normal child, and therefore she seeks damages for the pain and suffering sustained as a result of the birth of the child, the emotional upset she has undergone and will undergo, loss of income and the future cost of rearing the child. Her husband sues per quod and seeks to recover damages for the loss of his wife's services and the medical expenses he incurred for her prenatal care and delivery of the child.
Dr. Portadin and Vineland moved for summary judgment on the ground that the complaint failed to state a claim against them upon which relief could be granted, relying on the Supreme Court's decision in Berman v. Allan, 80 N.J. 421 (1979). The trial judge refused to dismiss the compliant; however, on his own motion he amended or treated the motion as one to limit damages, and thereupon, limited plaintiffs' damage claims to those for emotional distress.
Plaintiffs contend on this appeal that the trial judge's action in amending or treating the motion as one to limit damages denied them their constitutional right of due process. We disagree. We think it was entirely appropriate case management for the trial judge in these circumstances to treat *469 defendants' summary judgment motion as one to limit damages. It refined the issues for trial, with the result that there will be a savings of time and expense to both the litigants and the court.
Plaintiffs also contend that the trial judge erred in concluding that Berman v. Allan, supra, barred their claims for medical expenses and child support. In Berman the plaintiffs consulted the defendant physicians while Mrs. Berman was pregnant. Mrs. Berman later gave birth to a child afflicted with Down's Syndrome. The Bermans claimed that defendants were negligent in failing to inform them about a prenatal test for diagnosing genetic defects. The Supreme Court held that the Bermans' claim for "wrongful birth" based on the denial of an opportunity to make an informed decision concerning an abortion was maintainable, and that the parents could pursue their claim for damages for mental and emotional anguish they had suffered and would continue to suffer as a result of the child's condition. However, the Supreme Court held that the parents could not recover for medical or other expenses they would necessarily incur in properly raising, educating and supervising their child, stating:
Troublesome, however, is the measure of damages. As noted earlier, the first item sought to be recompensed is the medical and other expenses that will be incurred in order to properly raise, educate and supervise the child. Although these costs were "caused" by defendants' negligence in the sense that but for the failure to inform, the child would not have come into existence, we conclude that this item of damage should not be recoverable. In essence, Mr. and Mrs. Berman desire to retain all the benefits inhering in the birth of the child  i.e., the love and joy they will experience as parents  while saddling defendants with the enormous expenses attendant upon her rearing. Under the facts and circumstances here alleged, we find that such an award would be wholly disproportionate to the culpability involved, and that allowance of such a recovery would both constitute a windfall to the parents and place too unreasonable a financial burden upon physicians. See, e.g., Rieck v. Medical Protective Co., 64 Wis.2d 514, 219 N.W.2d 242, 244-245 (Sup.Ct. 1974); Coleman v. Garrison, 349 A.2d 8 (Sup.Ct.Del. 1975) [80 N.J. at 432-433]
The same underlying policy was expressed by the Supreme Court in Gleitman v. Cosgrove, 49 N.J. 22, 29-30 (1967), which was overruled in part by Berman v. Allan, supra, 80 N.J. at 431-434.
*470 Plaintiffs further argue that Berman is distinguishable because it involved parents who wanted a child but had an abnormal child where as here, they did not want any child, even a normal child. They rely on Betancourt v. Gaylor, 136 N.J. Super. 69, 77 (1975), wherein the Law Division held that child-rearing costs could be recovered in an action for wrongful pregnancy based on negligent sterilization where a normal child is born. We see no distinction between a so-called "wrongful birth" action, as in Berman, and the so-called "wrongful pregnancy" action referred to in Betancourt v. Gaylor, supra. In our view, the rule laid down in Berman is applicable here and precludes recovery for the future expense which the parents may incur in raising, educating and supervising the child. See M. and Wife v. Schmid Laboratories, Inc., 178 N.J. Super. 122, 126-127 (App.Div. 1981). This result finds persuasive support in Rieck v. Medical Protective Co. of Fort Wayne, Ind., 64 Wis.2d 514, 219 N.W.2d 242 (Sup.Ct. 1974), wherein the court refused to award damages to parents of a normal child who claimed that defendants, a clinic and an obstetrician, failed to detect Mrs. Rieck's pregnancy in time to permit an abortion. What the Wisconsin Supreme Court stated there is worthy of being repeated:
The complaint raises question of public policy, or, more precisely, whether the public policy tests, heretofore laid down by this court, are here met. In this state, negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that a defendant is liable for plaintiff's injuries. Recovery, or the determination to impose or not to impose liability, involves public policy considerations. Even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden (in the case before us, upon physicians and obstetricians); or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. Any one of these public policy considerations could be sufficient to deny recoverability. We find more than one applicable to the allegations of this complaint, requiring a denial of recovery of damages upon the allegations of this complaint upon public policy grounds.

*471 To permit the parents to keep their child and shift the entire cost of its upbringing to a physician who failed to determine or inform them of the fact of pregnancy would be to create a new category of surrogate parent. Every child's smile, every bond of love and affection, every reason for parental pride in a child's achievements, every contribution by the child to the welfare and well-being of the family and parents, is to remain with the mother and father. For the most part, these are intangible benefits, but they are nonetheless real. On the other hand, every financial cost or detriment  what the complaint terms "hard money damages"  including the cost of food, clothing and education, would be shifted to the physician who allegedly failed to timely diagnose the fact of pregnancy. We hold that such result would be wholly out of proportion to the culpability involved, and that the allowance of recovery would place too unreasonable a burden upon physicians, under the facts and circumstances here alleged. [219 N.W.2d at 244-245; footnotes omitted]
Similarly, in Coleman v. Garrison, 349 A.2d 8 (1975), the Delaware Supreme Court held that a physician who allegedly performed a sterilization procedure in a negligent manner could not be compelled to assume the financial responsibility for raising and educating a child born to one of his patients, reasoning, in part, as follows:
First, as to the legal concept, it is settled Delaware law that recovery may not be had for damages which are speculative or conjectural. Laskowski v. Wallis, Del.Supr., 205 A.2d 825 (1964); Henne v. Balick, Del.Supr., 146 A.2d 394 (1958). And that applies to any attempt to measure the value of a human life against its costs. A child is born  how can it be said within the ambit of legal predictability that the monetary cost of that life is worth more than its value? We recognize that a few courts, approaching the problem in clinical terms, have applied a "balancing test" which, presumably, permits a jury to say that a life has been weighed and found wanting and thus the parents have been "damaged." See 27 A.L.R.3d Annot.: 906 and the discussion of the cases in Terrell v. Garcia, Tex.Civ.App., 496 S.W.2d 124 (1973). We respect the efforts of other Courts to provide a remedy under the circumstances but it seems to us that that kind of judgment, if appropriate at all in an American Court of law, might be applied at the end of a life, after it has been lived and when the facts can be identified. But, in our view, any attempt to apply it at birth can only be an exercise in prophecy, an undertaking not within the speciality of our fact-finders. [at 12; footnote omitted]
See, also, Annotation, "Medical Malpractice, and Measure and Element of Damages, in Connection With Sterilization or Birth Control Procedures," 27 A.L.R.3d 906, 916-919 (1969).
We have no hesitancy in concluding that the trial judge properly held that plaintiffs were precluded from recovering any expenses for raising their child. While a few courts have taken *472 what might be regarded as a different view (see, e.g., Custodio v. Bauer, 251 Cal. App.2d 303, 59 Cal. Rptr. 463, 27 A.L.R.3d 884 (D.Ct.App. 1967); Troppi v. Scarf, 31 Mich. App. 240, 187 N.W.2d 511 (Ct.App. 1971)), we simply disagree with their holdings. To the extent that Betancourt v. Gaylor, supra, is in conflict with our decision, we disapprove it.
However, we agree with plaintiffs that the trial judge erred in precluding them from recovering damages for the medical expenses incurred during the course of Mrs. P's pregnancy and delivery. We do not read Berman as precluding the recovery of such expenses. We are satisfied that Mrs. P may recover damages for the pain and suffering accompanying her pregnancy and delivery and for the wages lost during that period, and that her husband may recover for loss of consortium and for the medical expenses incurred which are attributable to the pregnancy and delivery. See West v. Underwood, 132 N.J.L. 325, 326 (E. & A. 1945). To this limited extent, the order of the trial court is reversed.
Finally, we point out that plaintiffs are entitled to recover damages for the consequences of defendants' alleged tortious conduct based on a claim of intentional performance of unauthorized surgery. A physician clearly must inform his patient of the facts necessary for the patient to give intelligent consent to proposed surgery. Kaplan v. Haines, 96 N.J. Super. 242, 256-257 (App.Div. 1967), aff'd o.b. 51 N.J. 404 (1968). A physician has no license to operate upon a patient against his or her will or by subterfuge, or to perform an operation of a sort different from that to which the patient has consented. Bennan v. Parsonnet, 83 N.J.L. 20, 25 (Sup.Ct. 1912). Thus, if plaintiffs' proofs establish that Dr. Portadin performed a different operation from that which plaintiffs consented to, and that this was a deviation from accepted standards of medical practice, plaintiffs, subject to the limitations discussed above, may recover damages resulting from such medical malpractice. Of course, it is fundamental that no matter under what theories liability may be established, there cannot be any duplication of damages.
*473 Accordingly, the order is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. We do not retain jurisdiction.