**Anna M. NANKE, f/k/a Anna M. Smith, Appellant,**

v.

**John G. NAPIER, Appellee.**

**No. 83–102.**

Supreme Court of Iowa.

April 11, 1984.

Richard A. Knock of Mershon, Snow, Knock & Moothart, Cedar Falls, for appellant.

James E. Walsh, Jr., of Clark, Butler & Walsh, Waterloo, for appellee.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, SCHULTZ and WOLLE, JJ.

McGIVERIN, Justice.

The sole question presented here is whether, under Iowa law, the parent of a normal healthy child may maintain an action to recover the expenses of rearing that child from a physician whose alleged negligence in performing a therapeutic abortion permitted the birth of the child. The trial court ruled that such expenses may not be recovered. We agree and affirm.

Plaintiff alleged in her petition that defendant, a physician, had negligently performed for compensation a therapeutic abortion which proximately resulted in the "wrongful birth" of a normal, healthy child on January 12, 1981.

In counts I and II of her petition, plaintiff sought recovery for elements of damages such as pain and suffering, medical expenses, lost wages and emotional distress resulting from the unsuccessful abortion. Count III of the petition sought recovery for the expenses of rearing the child through the child's eighteenth birthday.

Upon the defendant's pretrial motion to dismiss count III of the petition for failure to state a claim, Iowa R.Civ.P. 104(b), the trial court sustained the motion. The court reasoned that in an alleged "wrongful birth" case, "public policy simply should not allow recovery of the costs of rearing a normal, healthy child who is to remain with the parent."

Plaintiff then sought, and we granted, interlocutory appeal of the ruling.

The parties agree that the issue first stated above is one of initial impression in Iowa.

A motion to dismiss admits the truth of all well-pleaded issuable and relevant facts. *Iowa Truck Center, Inc. v. Davis,* 204 N.W.2d 630, 631 (Iowa 1973). Therefore, we assume the facts alleged in the petition to be true and use them as a basis for considering the legal question raised by defendant in his motion to dismiss.

I. *Actions arising from birth of children.* The term "wrongful birth" has been applied by other courts to claims arising out of a diverse array of factual situations. In an attempt to inject a proper understanding of the many variations of "wrongful birth" claims, courts and commentators have utilized new terms to place these subtle factual variations in focus.

Recent decisions have adopted an approach that recognizes three distinct claims: (1) "wrongful pregnancy" or "wrongful conception" as an action brought by the parents of a healthy, but unplanned, child against a physician who negligently performed a sterilization or abortion; (2) "wrongful birth" as a claim brought by parents of a child born with birth defects; and (3) "wrongful life" as a claim brought by the child suffering from such birth defects. *Phillips v. United States,* 508 F.Supp. 544, 545 n. 1 (D.S.C. 1981); *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 581, 667 P.2d 1294, 1296 n. 1 (1983); *Harbeson v. Parke-Davis, Inc.,* 98 Wash.2d 460, 465, 656 P.2d 483, 487 (1983).

Under the above definitions, the factual situation involved in this case would more accurately be depicted as a claim for "wrongful pregnancy." We will regard plaintiff's petition in that context.

II. *Claim for cost of rearing a child.* The narrow question presented here, however, is whether plaintiff may recover as damages the costs of *rearing* a *healthy* child. This places us at a proverbial "fork

in the road" for there are presently three separate paths down which courts have been travelling on this issue:

A. *Complete Recovery of Child Rearing Costs.* Very little authority exists for the view that a parent should be entitled to recover the full cost of rearing a healthy child. In subscribing to this approach, the court in *Custodio v. Bauer*, 251 Cal.App.2d 303, 324, 59 Cal.Rptr. 463, 477 (1967), said that upon a finding of a breach of duty the plaintiffs were entitled to recover an amount to "replenish the family exchequer so that the new arrival will not deprive the other members of the family of what was planned as their just share of the family income." This approach was also followed in *Bowman v. Davis*, 48 Ohio St.2d 41, 356 N.E.2d 496 (1976).

B. *Child Rearing Costs Offset by the Benefits of Parenthood.* A second approach taken by courts has been to permit recovery for the costs of child rearing but only for the amount of such costs which exceed the benefits received from parenthood such as the value of the child's aid, comfort, society and assistance. *Hartke v. McKelway*, 707 F.2d 1544 (D.C.Cir.1983); *Phillips v. United States*, 508 F.Supp. 544 (D.S.C.1981) (predicting South Carolina law); *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983); *Stills v. Gratton*, 55 Cal.App.3d 698, 127 Cal.Rptr. 652 (1976); *Ochs v. Borrelli*, 187 Conn. 253, 445 A.2d 883 (1982); *Troppi v. Scarf*, 31 Mich. App. 240, 187 N.W.2d 511, *leave to appeal denied*, 385 Mich. 753 (1971); *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169 (Minn. 1977).

These jurisdictions have utilized as an offset to the financial cost of rearing the child the "benefits" rule of the Restatement (Second) of Torts, § 920 (1979), which provides:

> When the defendant's tortious conduct has caused harm to the plaintiff or his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in

mitigation of damages, to the extent that this is equitable.

C. *Complete Bar to Recovery of Child Rearing Costs.* A third approach, adopted by the majority of jurisdictions, completely bars recovery of child rearing costs. *McNeal v. United States*, 689 F.2d 1200 (4th Cir.1982) (interpreting Virginia law); *White v. United States*, 510 F.Supp. 146 (D.Kan.1981) (interpreting Georgia law); *Boone v. Mullendore*, 416 So.2d 718 (Ala. 1982); *Wilbur v. Kerr*, 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison*, 349 A.2d 8 (Del.1975); *Fassoulas v. Ramey*, —— So.2d —— (Fla.1984); *Public Health Trust v. Brown*, 388 So.2d 1084 (Fla.App.1980); *Cockrum v. Baumgartner*, 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983) (reversing 99 Ill.App.3d 271, 54 Ill.Dec. 751, 425 N.E.2d 968 (1981)), *cert. denied*, —— U.S. ——, 104 S.Ct. 149, 78 L.Ed.2d 139 (1984); *Schork v. Huber*, 648 S.W.2d 861 (Ky.1983); *Maggard v. McKelvey*, 627 S.W.2d 44 (Ky.App.1981); *Kingsbury v. Smith*, 122 N.H. 237, 442 A.2d 1003 (1982); *P. v. Portadin*, 179 N.J. Super. 465, 432 A.2d 556 (1981); *Sorkin v. Lee*, 78 A.D.2d 180, 434 N.Y.S.2d 300 (1980); *Sala v. Tomlinson*, 73 A.D.2d 724, 422 N.Y.S.2d 506 (1979); *Mason v. Western Pennsylvania Hospital*, 499 Pa. 484, 453 A.2d 974 (1982); *Terrell v. Garcia*, 496 S.W.2d 124 (Tex.Civ.App.1973), *cert. denied*, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); *Rieck v. Medical Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242 (1974); *Beardsley v. Wierdsma*, 650 P.2d 288 (Wyo.1982). *Cf. Harbeson v. Parke-Davis, Inc.*, 98 Wash.2d 460, 656 P.2d 483 (1983) (damages restricted to expenses in *excess* of the cost of the birth and rearing of a *healthy* child). *See generally Handling Pregnancy and Birth Cases*, pp. 156–74 (W. Winborne ed. 1983) (overview of claims for child rearing costs).

We adopt the majority approach and thus conclude that the costs of rearing a normal, healthy child cannot be recovered as damages to the parent or parents.

This conclusion is based on the public policy of Iowa which dictates that a parent

cannot be said to have been damaged or injured by the birth and rearing of a normal, healthy child because the invaluable benefits of parenthood outweigh the mere monetary burdens as a matter of law. *See Fassoulas v. Ramey,* —— So.2d at ——; *Terrell v. Garcia,* 496 S.W.2d at 128. "That a child can be considered an injury offends fundamental values attached to human life.... Respect for life and the rights proceeding from it are at the heart of our legal system and, broader still, our civilization." *Cockrum v. Baumgartner,* 95 Ill.2d at 198, 69 Ill.Dec. at 172, 447 N.E.2d at 388–89. "The bond of affection between child and parent, the pride in a child's achievement, and the comfort, counsel and society of a child are incalculable benefits, which should not be measured by some misplaced attempt to put a specific dollar value on a child's life." *Beardsley v. Wierdsma,* 650 P.2d at 293.

The awkwardness that would inevitably surface under the application of the Restatement (Second) § 920 "benefits" approach as a partial offset to the financial cost of rearing the child was accurately depicted in *Cockrum:*

> It can be seen that permitting recovery then requires that the parents demonstrate not only that they did not want the child but that the child has been of minimal value or benefit to them. They will have to show that the child remains an uncherished, unwanted burden so as to minimize the offset to which the defendant is entitled. The court in *Public Health Trust v. Brown* (Fla.App.1980), 388 So.2d 1084, 1086 n. 4, convincingly noted: "The adoption of [the 'benefits' rule] would thus engender the unseemly spectacle of parents disparaging the 'value' of their children or the degree of their affection for them in open court. It is obvious, whether the conclusion is phrased in terms of 'public policy,' [citation] or otherwise, that such a result cannot be countenanced."

95 Ill.2d at 202, 69 Ill.Dec. at 173, 447 N.E.2d at 390.

Our ruling today is limited to the unique facts of this case and the narrow issue presented. We hold only that the parent of a normal, healthy child may not maintain an action to recover the expenses of rearing that child from a physician whose alleged negligence in performing a therapeutic abortion permitted the birth of such child. We do not pass on the merits of plaintiff's claims in counts I and II of her petition as they are not properly before us at this time; nor do we now pass on other questions that might be presented in this sensitive and difficult field of the law.

`For the reasons stated herein, the ruling of the trial court is affirmed.

AFFIRMED.

All Justices concur except WOLLE, J., who dissents.

WOLLE, Justice (dissenting).

I dissent, agreeing rather with those courts that would decide the damage issue here presented not as a policy-based question of black-letter law but rather as a question of fact—whether a plaintiff has proved an allegation of damages. Little more need be said in support of my view than what was said in two cases decided this past year.

In *Hartke v. McKelway,* 707 F.2d 1544 (D.C.Cir.1983), the court succinctly explained why it believes "the course of greater justice" is to allow a parent to prove that raising an unplanned child constituted compensable damages to that parent:

> Usually, of course, it is true that the birth of a healthy child confers so substantial a benefit on its parents as to outweigh the physical, emotional, and financial burdens of bearing and raising it; "else, presumably, people would not choose to multiply so freely," *Troppi* 31 Mich.App. at 254, 187 N.W.2d at 517. But when a couple has chosen not to have children, or not to have any more children, the suggestion arises that for them, at least, the birth of a child would not be a net benefit. That is their choice

and the courts are required to respect it. *Cf. Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 726–727, 35 L.Ed.2d 147 (1973) (woman's right to abortion: "Maternity, or additional offspring, may force upon the woman a distressful life and future."); *Griswold v. Connecticut,* 381 U.S. 479, 485–86, 85 S.Ct. 1678, 1682, 1683, 14 L.Ed.2d 510 (1965) (couple's right to use contraceptives).

707 F.2d at 1552–53.

In *University of Arizona v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983), the court decided that in each case the trier of fact should decide whether and to what extent a parent has sustained a net economic loss caused by negligence resulting in the unplanned birth of a child. The court explained:

> In reaching our decision, we are influenced greatly by what we perceive to be the uniform rules of damages for all tort cases. One of the basic principles of damage law is the concept that a wrongdoer may be held liable for all damages which he may have caused and all costs which the victim may sustain as a result of the wrong. *Sherlock v. Stillwater Clinic,* 260 N.W.2d at 174; *Cockrum v. Baumgartner,* 95 Ill.2d at 206–07, 69 Ill.Dec. at 175, 447 N.E.2d at 392 (Clark, J. dissenting)....
>
> We see no reason why ordinary damage rules, applicable to all other tort cases, should not be applicable to this situation. By allowing the jury to consider the future costs, both pecuniary and non-pecuniary, of rearing and educating the child, we permit it to consider all the elements of damage on which the parents may present evidence. By permitting the jury to consider the reason for the procedure and to assess and offset the pecuniary and non-pecuniary benefits which will inure to the parents by reason of their relationship to the child, we allow the jury to discount those damages, thus reducing speculation and permitting the verdict to be based upon the facts as they actually exist in each of the unforeseeable variety of situations which may come before the court.

136 Ariz. at 585–86, 667 P.2d at 1300–01.

The majority opinion of this court forecloses the plaintiff from moving beyond the bare allegations of her petition and proving such relevant facts on this issue of damages as her own unique socio-economic circumstances and the reasons why she wished to delay her raising of a child. We have heretofore recognized the unique character of each parent-child relationship that may be involved in the assessment of damages to a parent:

> This is a highly personal relationship which must of necessity be decided on a case-by-case basis. When it relates to a parent and child, it depends on all the circumstances important in the lives of a *particular* parent and a *particular* child.
>
> . . . .
>
> The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons.

*Pagitt v. City of Keokuk,* 206 N.W.2d 700, 703–04 (Iowa 1973) (emphasis in original) (upholding jury's award to parent in wrongful death action arising from death of two sons).

Because I believe traditional principles of tort law are adequate to the task of instructing a jury on how to reach a fair verdict on the damage issue here presented, I would reverse.