803 A.2d 160 (2002)
353 N.J. Super. 439
Ryan Bennett LODATO, an infant by his Guardian ad Litem, Deborah L. LODATO and Deborah L. Lodato and Anthony C. Lodato, individually, Plaintiffs-Appellants,
v.
Kenneth KAPPY, M.D., Defendant-Respondent,
and
Lennart A. Carlson, M.D., William Ainslie, Jr., M.D., Wayne E. Steinbeck, M.D., John F. Kennedy Medical Center, and OB/GYN Group of Metuchen, P.A., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 2002.
Decided August 2, 2002.
Barry M. Packin, West Orange, argued the cause for appellants (Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys; Mr. Packin, of counsel and on the brief).
Gary L. Riveles argued the cause for respondent (Dughi, Hewit & Palatucci, attorneys; Louis John Dughi, Jr., of counsel; Mr. Riveles, on the brief).
Bruce H. Nagel argued the cause for amicus curiae Association of Trial LawyersNew Jersey (Nagel Rice Dreifuss & Mazie, attorneys; Mr. Nagel and Robert H. Solomon, on the brief).
Before Judges SKILLMAN, WALLACE, JR. and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
This is a wrongful birth case resulting in a finding of no cause for action against defendant Kenneth Kappy, M.D. Because we conclude that the trial judge, among other trial errors, erred in instructing the jury on the issue of medical judgment, we reverse and remand for a new trial. However, since a new trial is required on all issues including damages, the primary issue that we address is whether a defendant in a wrongful birth case is entitled to an offset of any jury award for emotional damage by the joy and benefit a parent receives from the child. We answer this question in the negative and hold that the *161 trial judge erred in instructing the jury that a defendant is entitled to consideration of the joy/benefit rule described in Restatement (Second) of Torts § 920 (1977).
Plaintiffs Ryan Bennett Lodato, through his mother and guardian, Deborah L. Lodato, and his parents, Deborah and Anthony C. Lodato, individually (collectively "plaintiffs"), appeal from that portion of a jury verdict that found that Kappy was not negligent in his reading of an ultrasound examination and failure to detect spina bifida. Plaintiffs also claimed that defendant wrongfully failed to offer Deborah the option of taking a blood test, an alpha-feto-protein (AFP) screening test, despite defendant's opinion that Deborah was within the window of opportunity to take such test.
Ryan was born with severe birth defects, including spina bifida, neural tube defects, meningomyelocele and Arnold-Chiari II malformation of the cerebellum and hydrocephalus. Although defendant Kappy is the only defendant responding to this appeal, plaintiffs' original action was brought against her treating obstetricians, defendants Lennart A. Carlson, William Ainslie, Jr. and Wayne E. Steinbeck, their medical practice, OB/GYN of Metuchen (OGGM) and the John F. Kennedy Medical Center in Metuchen (JFK). The essential allegations of plaintiffs' complaint were that defendant doctors: 1) failed to properly read and interpret an ultrasound; 2) failed to advise Deborah to have various diagnostic tests to detect defects in the fetus; 3) failed to advise her regarding the proper timing of those tests; and 4) advised her not to undergo an amniocentesis test. Deborah and Anthony alleged that they would have terminated the pregnancy if they had been properly advised of the positive results of such testing. The jury returned a verdict in favor of the individual doctors including Kappy but held OGGM liable. It concluded that Deborah was also negligent and assigned fifty percent to her comparative negligence.
Over plaintiffs' objection, the judge charged the jury as follows:
[I]f you should decide that the defendants or any of them are liable to the plaintiffs for any emotional distress they have suffered as a result of the birth of their son Ryan there is an additional consideration which must enter into your deliberations before you award damages for their emotional distress. If you find that in spite of Ryan's spina bifida he's a source of pride, joy and love to his parents and his family and that his existence has benefitted the parentsthe plaintiff parents you must offset the plaintiff's [sic] recovery for their emotional distress by the benefit they have received and will continue to receive from their son.
The verdict sheet asked the jury to determine: "What is the percentage of mental and emotional anguish and distress experienced by Deborah [or Anthony] Lodato attributable to Ryan's disability and condition as compared to the percentage of joy experienced by Deborah [or Anthony] Lodato in having/rearing Ryan?" With respect to Deborah, the jury found sixty-five percent attributable to emotional distress and thirty-five percent to joy; and with respect to Anthony, seventy-five percent emotional distress and twenty-five percent joy. The jury returned a verdict of $500,000 in favor of Deborah and a verdict of $350,000 in favor of Anthony for their past and future mental and emotional anguish and distress. The impact of the findings of comparative negligence and the "joy percentage" was substantial as both verdicts were reduced by both the fifty percent comparative negligence and the respective *162 "joy" percentages as to Deborah and Anthony. The molded verdicts ultimately entered were $162,500 in favor of Deborah and $131,250 in favor of Anthony.[1]
Following a series of post-trial motions, plaintiffs and defendant OGGM settled their claim, and plaintiffs proceeded on this appeal as against defendant Kappy.
[At the direction of the court, the facts relevant to liability issues and the discussion of other issues raised on appeal have been deleted from the published opinion.]
We now address the issue of the application of the joy/benefit rule. Plaintiffs and amicus argue that the trial judge erred when it granted defendants' motion in limine and applied the provisions of the Restatement (Second) of Torts § 920 (Section 920), instructing the jury to offset any amount awarded plaintiffs for emotional distress by the joy and benefit they received from their child.
Defendant moved in limine for the right to cross-examine plaintiffs on the benefit the family received from Ryan's life, and for the jury to receive an instruction based on Section 920, which provides:
When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.
Defendants requested the judge to instruct the jury to the effect that, if the jury found the presence of emotional distress, it must balance that finding against the benefit the plaintiffs have received from Ryan's life.
Although Section 920 has not been applied in a wrongful birth action, the trial judge found the Restatement to be "very persuasive" and held that defendants were permitted to "explore the `restatement' and the joy aspect in so far as this parent/child relationship is concerned."
Defendant contends that the trial judge's decision was correct because "[e]quity requires the application of the benefit rule in this circumstance where the damages are black and white, life versus no life." He asserts that under such circumstances, "it would be entirely unjust for the jury to award the parents damages for emotional distress in raising a child with birth defects without considering the value of the life, joy, and other `benefits' of having and raising the child."
We disagree with both the trial judge and defendant. Although the Supreme Court has elucidated the proper type and scope of damages to be awarded for a wrongful birth cause of action, the Court has not suggested any basis for offsetting the emotional distress damages appropriate for this type of action. Furthermore, the evolution in the Court's decisions demonstrates consideration of the issues pertaining to the joy/benefit factors as it reflects upon what type of damages are appropriate for these actions.
In Gleitman v. Cosgrove, 49 N.J. 22, 28-29, 227 A.2d 689 (1967), the Court rejected a child's cause of action for "wrongful life" because damages were impossible to ascertain and the Court refused to "weigh the value of life with impairments against the nonexistence of life itself." The Court also declined to recognize a cause of action for the parents' emotional suffering because it *163 "firmly believe[d] the right of their child to live is greater than and precludes their right not to endure emotional and financial injury." Id. at 31, 227 A.2d 689.
The Court revisited the issue in Berman v. Allan, 80 N.J. 421, 426-34, 404 A.2d 8 (1979). It reiterated its position that the infant plaintiff was unable to state a cause of action for wrongful life because the Court refused to "say that she would have been better off had she never been brought into the world." Id. at 430, 404 A.2d 8. As to the parents' claims, however, the Court overruled Gleitman because the United States Supreme Court's subsequent opinion in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), had established a woman's constitutional right to choose to abort a fetus that had genetic defects. See Berman, supra, 80 N.J. at 431-32, 404 A.2d 8. Public policy supported the proposition that she not be impermissibly denied the opportunity to make that decision and that medical providers should not be immunized for negligently failing to provide adequate medical guidance on the issue. Ibid.
On the issue of recoverable damages, the Court concluded:
[T]he first item sought to be recompensed is the medical and other expenses that will be incurred in order to properly raise, educate and supervise the child. Although these costs were "caused" by defendants' negligence in the sense that but for the failure to inform, the child would not have come into existence, we conclude that this item of damage should not be recoverable. In essence, Mr. and Mrs. Berman desire to retain all the benefits inhering in the birth of the childi.e., the love and joy they will experience as parentswhile saddling defendants with the enormous expenses attendant upon her rearing. Under the facts and circumstances here alleged, we find that such an award would be wholly disproportionate to the culpability involved, and that allowance of such a recovery would both constitute a windfall to the parents and place too unreasonable a financial burden upon physicians.
[Id. at 432, 404 A.2d 8.]
Thus, Berman denied the parents the right to recover any expenses for raising their child and, in doing so, considered that an emotional offset existed that precluded awarding the parents the windfall of having their child-rearing expenses paid entirely by defendants. The Court nonetheless found that the parents were entitled to damages for emotional suffering because the defendants actions "directly" deprived them "of the option to accept or reject a parental relationship with the child and thus caused them to experience mental and emotional anguish upon their realization that they had given birth to a child afflicted with Down's Syndrome." Id. at 433, 404 A.2d 8. The Court made no mention of the need to offset the emotional distress damages. Id. at 433-34, 404 A.2d 8. It apparently viewed the offset as more appropriately applied to the child-rearing expenses, rather than the emotional distress damages.
In Schroeder v. Perkel, 87 N.J. 53, 68-69, 432 A.2d 834 (1981), the Court expanded Berman and held that the parents' damages in a wrongful birth action included the extraordinary medical expenses associated with raising a child with cystic fibrosis. Once again, however, the Court specifically declined to allow the parents to recover the ordinary expenses of raising and educating the child, and explained:
By limiting damages to those expenses that are actually attributable to the affliction, we are not conferring a windfall on Mr. and Mrs. Schroeder. Although they may derive pleasure from Thomas, *164 that pleasure will be derived in spite of, rather than because of, his affliction. Mr. and Mrs. Schroeder will receive no compensating pleasure from incurring extraordinary medical expenses on behalf of Thomas. There is no joy in watching a child suffer and die from cystic fibrosis.
[Id. at 69, 432 A.2d 834.]
The Court implicitly considered whether to offset the plaintiffs' damages for the benefits they received from having the child in their life, and determined that the offset was accomplished by limiting the compensatory damages to extraordinary expenses only. It made no attempt to provide an additional offset for the parents' emotionally related damages.
In Procanik v. Cillo, 97 N.J. 339, 352-56, 478 A.2d 755 (1984), the Court held that either the infant plaintiff or the parents, but not both, may initiate an action to recover extraordinary medical expenses incurred during the child's infancy, and that the child may recover those expenses during his or her majority. The Court characterized the infant's action as one for "wrongful life," but stressed that its holding was predicated on the "needs of the living," rather than on the concept that "non-life is preferable to an impaired life." Id. at 348, 353, 478 A.2d 755. Consequently, the Court declined to extend to the infant any right to recover damages for pain and suffering and a diminished childhood. Ibid. It observed that
the award of the cost of the extraordinary medical care to the child or the parents, when combined with the right of the parents to assert a claim for their own emotional distress, comes closer to filling the dual objectives of a tort system: the compensation of injured parties and the deterrence of future wrongful conduct.
[Id. at 355, 478 A.2d 755.]
The Court made no mention of any additional offset for emotional benefits and joy.
In Canesi v. Wilson, 158 N.J. 490, 501, 730 A.2d 805 (1999), the primary issue before the Court was whether plaintiffs were required to prove medical causation in a wrongful birth action that involved failure to warn of risks to the fetus from the use of drugs prescribed by defendants. Although not central to its decision, the Court examined the type of damages recoverable in a wrongful birth action because the issue was relevant to its holding that the parents were not required to prove that the doctor's negligence caused the defect. Id. at 501-02, 517-18, 730 A.2d 805. As with each of the previous wrongful birth/life cases, the Court made no observation of any offset requirement for emotional distress damages.
We find nothing in the development of the case law to support the trial judge's conclusion that plaintiffs' emotional distress damages should be offset by the percentage of joy and benefit they receive from Ryan. In support of his contention that Section 920 was applicable, defendant cites only one Law Division case, Gracia v. Meiselman, 220 N.J.Super. 317, 325-27, 531 A.2d 1373 (Law Div.1987), which examined the applicability of Section 920 and approved of the offset concept. Gracia involved the issue of whether to apply the benefits concept in an informed consent case where the patient agreed to an operation and received its benefit but also experienced nerve damage, the potential of which he claimed to be unaware. Unlike the patient in Gracia, who obtained a benefit he otherwise would not have had, Deborah's doctors conferred no benefit upon her by denying her the right to decide whether to continue or terminate her pregnancy. Section 920, by its language, is premised on the receipt of such benefit. Moreover, the judge in Gracia acknowledged *165 that the Court in Berman had applied the benefits doctrine to determine that the normal costs of raising a child were outweighed by the love and affection that the parents received and thus those expenses were not recoverable. Id. at 326, 531 A.2d 1373. In sum, Gracia provides no support for the argument that New Jersey law requires that the same love and affection, which preclude recovery for ordinary child-rearing expenses, should also serve to offset and reduce the emotional distress damages in a wrongful birth case.[2]
The express limitations of Section 920 make it inapplicable to a wrongful birth action. The section requires that a benefit be conferred by the very conduct that caused harm. As the comment explains, the rule is limited to the same interest. Thus, damages from an invasion of one interest, such as loss of consortium, are not diminished by a showing that another interest has benefitted, such as mitigation of financial expense of supporting the spouse. Consequently, "to justify a diminution of damages the benefit must result from the tortious conduct." Section 920, comment d; see also Section 920, comment a (stating that "[t]he rule stated in this Section normally requires that the damages allowable for an interference with a particular interest be diminished by the amount to which the same interest has been benefitted by the defendant's tortious conduct").
Other jurisdictions have rejected the application of Section 920 in wrongful birth cases, see, e.g., Taylor v. Kurapati, 236 Mich.App. 315, 600 N.W.2d 670, 674-91 (1999) (abrogating the wrongful birth cause of action and commenting, in dicta, as to the inapplicability of the benefit rule); Bader v. Johnson, 675 N.E.2d 1119, 1123 (Ind.Ct.App.1997), while others have permitted an offset for emotional benefits, see, e.g., Phillips v. U.S., 575 F.Supp. 1309, 1319-20 (D.S.C.1983) (holding that the emotional benefits to the parents resulting from the child's birth could be applied to offset any damage award); Harbeson v. Parke-Davis, Inc., 98 Wash.2d 460, 656 P.2d 483, 494 (1983) (same).
The purpose of the benefits rule is to limit the recovery to the harm actually incurred "and not to permit the tortfeasor to force a benefit on [the injured party] against his will." Section 920, comment f. The rule is limited by the equitable considerations relevant to the assessment of damages in all tort cases, which is that the injured person is entitled to damages that will place him or her as nearly as possible in the position he or she would have occupied if not for defendant's tortious conduct.
The Court has specifically recognized that the pleasure that the parents derived from a child born with severe birth defects "will be derived in spite of, rather than because of, his affliction." Schroeder, supra, 87 N.J. at 69, 432 A.2d 834. As Justice Handler observed in Procanik, the tragedy in a wrongful birth case is that "the parental condition is characterized not by diminished love for the child," but, rather, parents in those circumstances "are consumed with an awful sorrow" and grief, made more poignant by their love for their child. 97 N.J. at 358-63, 478 A.2d 755.
*166 The claim that the child's birth is a value conferred by the defendants' tortious conduct is rejected. Unlike the situation of a doctor who has performed an operation or medical procedure that has both benefitted and harmed the patient, a defendant who in some way tortiously interferes with procreative choice has no actual role in bringing about the conception or birth of the child. The process of Ryan's conception and birth was a natural one that occurred without defendant's participation. Defendant did not bring about the benefit of Ryan's birth; he interfered with plaintiffs' decision-making process on the subject. See Canesi, supra, 158 N.J. at 501, 730 A.2d 805.
When parents receive correct information concerning the possibility of bearing a disabled child, they nonetheless may chose to continue the pregnancy and raise the child. Certainly the medical personnel who provided the correct information cannot be understood as having conferred a benefit on the family by virtue of the child's existence. The only "benefit" conferred by the doctor's proper, non-tortious conduct was to allow the parents to make a fully informed decision regarding their course of action.
Defendant argues, however, that "[i]t would be wrong, morally, ethically, and legally to treat Ryan Lodato's life as a misadventure, something that should never have happened and that now has no redeeming value." This argument grossly mischaracterizes plaintiffs' claims and the underlying legal principles that led the Court to establish a cause of action for wrongful birth. The Court has repeatedly affirmed that the legal harm in a wrongful birth action is not the birth of the child, but the parents' lost opportunity to decide for themselves whether to continue the pregnancy. See McKenney v. Jersey City Med. Ctr., 167 N.J. 359, 372-73, 771 A.2d 1153 (2001); Canesi, supra, 158 N.J. at 501-04, 730 A.2d 805; Procanik, supra, 97 N.J. at 347-48, 478 A.2d 755; Berman, supra, 80 N.J. at 431-33, 404 A.2d 8.
Allowing a jury to determine the offset in wrongful birth cases places the parents in the intolerable position of recognizing that any declaration of love for the child during the case may very well cause them to forego money damages that might help the family better cope with the circumstances. Our courts have avoided this Hobson's Choice in wrongful birth cases by accounting for the benefits bestowed by the child in a damages rule that simply eliminates recovery for the normal costs of raising the child. Contrary to defendant's argument, this rule in no way overlooks or demeans the value of Ryan's life.
In sum, no legal or policy basis exists for the court's decision to apply the joy/benefit rule in this wrongful birth case. On retrial, the judge shall not charge the joy/benefit rule or the application of Section 920.
Reversed and remanded for a new trial.
NOTES
[1] Verdicts were also entered in favor of Ryan representing his future medical care and expenses as well as a verdict in favor of Deborah for past medical expenses. Neither verdict nor the prejudgment interest entered as to all judgments is the subject of the issues raised on this appeal.
[2] We distinguish between the application of the rule in wrongful pregnancy cases that involve damages for the birth of a healthy child. We have permitted recovery for wrongful pregnancy and have followed the same reasoning as Berman, applying the concept of the benefits rule to preclude recovery for the normal cost of raising the child, rather than applying it to reduce the emotional distress damages. See P. v. Portadin, 179 N.J.Super. 465, 469-72, 432 A.2d 556 (App.Div. 1981); J.P.M. v. Schmid Labs., Inc., 178 N.J.Super. 122, 126-27, 428 A.2d 515 (App. Div.1981).