**Steven and Rebecca HICKMAN,**
**Appellants,**

v.

**Charles M. MYERS, M. D., Appellee.**

**No. 18658.**

Court of Appeals of Texas,
Fort Worth.

April 22, 1982.

Rehearing Denied May 27, 1982.

Timothy E. Kelley, P. C., and Timothy E. Kelley, Dallas, for appellants.

Cantey, Hanger, Gooch, Munn & Collins, and John F. Gray, Fort Worth, for appellee.

Before MASSEY, C. J., and SPURLOCK and JORDAN, JJ.

OPINION

SPURLOCK, Justice.

This is an appeal from the dismissal of a medical malpractice suit. The Hickmans sued Dr. Myers for damages for the cost of rearing a child born to Mrs. Hickman after the alleged negligent performance of a laproscoptic tubal ligation on her which was supposed to render her sterile. Dr. Myers specially excepted to the Hickmans' claim for damages resulting from the rearing of the unplanned child, stating that he is entitled to be apprised of the physical condition of the child. Texas law does not at the present time allow recovery of damages for the rearing of a healthy, but unplanned child. The trial court sustained the special

exception and granted the Hickmans leave to amend their petition, but they chose not to do so and the cause was dismissed with prejudice.

We affirm.

The Hickmans, who were parents of two children, sought sterilization. The sterilization operation Dr. Myers performed on Mrs. Hickman was unsuccessful because of his alleged negligence in failing to completely cut or cauterize the right fallopian tube, leaving an open channel. The parents, during oral submission, agreed that Mrs. Hickman became pregnant and gave birth to a healthy child after this operation.

■ By two points of error, the Hickmans claim that the trial court erred in sustaining Dr. Myers' special exceptions to the Hickman's First Amended Original Petition and dismissing their cause of action. Dr. Myers specially excepted to the allegations in Plaintiff's First Amended Original petition wherein Plaintiffs complain that they will be forced to bear the cost of rearing the child which was born because of defendant's negligence. The defendant was entitled to be apprised as to the physical condition of the child since there can only be an enforceable claim under Texas law if the child is found not to be healthy. A special exception challenging a claim will be grounded on the proposition set out explicitly that, though there is a legal rule which might be applicable, the petition omits one or more allegations essential to bring plaintiff's claim within its scope. *McDonald*, 2 Tex.Civ. Practice 208, sec. 7.19 (1970). We find that defendant complied with the requirements set forth in Tex.R.Civ.P. 91 and that the trial court correctly ordered plaintiffs to amend their First Amended Original Petition. Upon plaintiffs' failure to comply with the order of the court to amend their pleadings, we find the court properly dismissed their action.

Plaintiffs argue that their petition states an enforceable claim in that the law in Texas should be overruled for four reasons. For clarification we shall examine each reason separately.

■ First, the Hickmans argue that the birth of a healthy, unplanned child is not a benefit which equals or exceeds the cost of the child's upbringing as a matter of law. A benefit can be defined as something that promotes well-being. Texas courts have attempted to conform this definition to society's recognition of the priceless fulfillment of bearing and rearing a child. Rather than attempt to value intangible benefits which derive from rearing a child, including satisfaction, joy and companionship, our courts have simply determined that public sentiment recognizes that these benefits to the parents outweigh their economic loss in rearing and educating a healthy, normal child. *Terrell v. Garcia*, 496 S.W.2d 124 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e., cert. den. 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484). "To allow damages for the birth and upbringing of a normal child would mean that the doctor would have to pay for the satisfaction and joy and affection which normal parents would ordinarily have in the rearing and education of a healthy child." *Hays v. Hall*, 477 S.W.2d 402 (Tex.Civ.App.—Eastland 1972, rev'd on other grounds, 488 S.W.2d 412 (Tex.1973). Courts in other jurisdictions continue to support this proposition. A parent cannot be said to have been damaged by the birth and rearing of a normal, healthy child. The intangible, but all-important, incalculable but invaluable "benefits" of parenthood far outweigh any of the mere monetary burdens involved. *Public Health Trust v. Brown*, 388 So.2d 1084 (Fla.App.1980). Public policy deems the birth of a healthy child a precious gift rather than a compensable wrong. *Wilczynski v. Goodman*, 73 Ill.App.3d 51, 29 Ill.Dec. 216, 391 N.E.2d 479, 5 FLR 2555 (1979).

Still other jurisdictions have adopted the "benefits rule" as defined in the Restatement of Torts 2d, sec. 920 at 509 (1979), "[w]hen the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." The Pennsylvania Superior Court ruled that a woman who conceived and

gave birth to an unwanted, but normal, healthy child after a negligently performed tubal ligation can recover the expense of rearing the child, but the benefit rule will be applied to reduce the amount of her recovery by the value of the child's aid, comfort and society during the parents' life expectancy. *Mason v. Western Pennsylvania Hospital,* 286 Pa.Super. 354, 428 A.2d 1366 (1981). That court found no basis for distinguishing between wrongful life situations in terms of entitlement of damages where the child is healthy or defective. It can be argued that this provision is misapplied under the circumstances of this case. The rewards of parenthood should not be allowed to mitigate rearing costs because "these rewards are emotional in nature and, great though they may be, do nothing whatever to benefit the plaintiff's injured financial interests." *Kashi, The Case of the Unwanted Blessing: Wrongful Life,* 31 U. of Miami L.Rev. 1409, 1415 (1977).

Other jurisdictions have taken still a different view. At least one court has taken the position that ethical and moral considerations should not be considered, and this case is therefore indistinguishable from an ordinary medical malpractice action. *Cockrum v. Baumgartner,* 99 Ill.App.3d 271, 54 Ill.Dec. 751, 425 N.E.2d 968 (1981). This case holds that the sentiment that the birth of a healthy albeit unplanned child is always a benefit does not rise to the level of public policy, and neither the individual nor society is harmed by a couple's choice not to have a child. *Cockrum v. Baumgartner, supra.*

While this court takes notice of these views, we uphold the proposition that the benefit of having a child cannot be equated with or diminished by the economic burden of rearing that child. We further find no line of reasoning in other jurisdictions which pursuades us to reverse that principle.

The Hickman's second argument is that the jury is better able to determine and apply public sentiment than the court. This raises the issue of what body of persons is the most qualified to decide the direction of our social values. In a very recent case, the Kentucky Court of Appeals, considered this dilemma and determined that "Without a clear expression of public opinion, some indication from the legislature, or an interpretation by our Supreme Court to the contrary, we conclude that our public policy prohibits the extension of liability to include these damages." *Maggard v. McKelvey,* 627 S.W.2d 44 (Ky.App.1981). The court held that the parents' damages are limited to the general and special damages incidental to the pregnancy and birth, such as pain and suffering, loss of consortium, medical and hospital expenses, and loss of wages.

To leave to the jury the responsibility of re-evaluating the current policy in Texas would be to retreat from the law. We agree with the Kentucky court. Such a drastic change in public policy is better left to those entities equipped to effectuate such change.

Appellant's third argument is that to excuse appellee of all liability would be to remove the primary deterrent against the negligent performance of sterilization operations. This court does not advocate the excusing of negligent conduct on the part of a tort-feasor. The issue on appeal in this court is the correct measure of damages which results from the negligent act, not whether the doctor should be absolved from all liability. Other courts have attempted to contrast the doctor's negligence in the performance of sterilization operations with the damage which the parents incurred in determining the correct measure of damages. This action can be viewed as one for wrongful pregnancy rather than wrongful life, thereby limiting the scope of the injury to the very real difficulties attending the unexpected pregnancy of a woman. *White v. U. S.,* 510 F.Supp. 146 (D.C.Kan.1981). Allowing the parents to recover for the cost of rearing a child constitutes a windfall to the parents and an unreasonable financial burden upon physicians and the result is to inflict a penalty on the defendant that is out of all proportion to the amount of his culpability. *White v. U. S., supra.* It is in society's best interest to hold physicians to a standard of professional competence and impose liability when they are negligent in

treating their patients, but to hold a doctor responsible for the support of a mistakenly conceived child takes him well beyond the scope of his duty to his patient, as commonly thought of by both the lay public and the medical profession. *Maggard v. McKelvey, supra.*

The Hickman's last argument is that the mere difficulty of calculating damages should not be an excuse for disallowing damages for the upbringing of an unplanned child.

We have disposed of the Hickmans' contention under what is already written. We again remark that Texas does not recognize at this time the recovery for the loss of companionship of a child. *Terrell v. Garcia, supra.*

█ In summary, we uphold the rule of law expressed in *Terrell v. Garcia*, that the cost of raising a healthy child born as a result of the negligent performance of a sterilization operation on the mother is not recoverable from the physician.

Appellant's points of error are overruled.