**Louise D. McNEAL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 82–1014.**

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1982.
Decided Sept. 27, 1982.

Benjamin P. Lynch, Jr., Norfolk, Va. (Taylor, Gustin, Harris, Fears & Davis, Norfolk, Va., on brief), for appellant.

Larry W. Shelton, Asst. U. S. Atty., Norfolk, Va. (Elsie L. Munsell, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before HALL and ERVIN, Circuit Judges, and HAMILTON,* District Judge.

PER CURIAM:

Appellant, Louise D. McNeal, filed this federal tort claims action alleging negligence on the part of Naval medical personnel in the performance of a sterilization operation at the Portsmouth, Virginia, Naval Regional Medical Center. After a non-jury trial, the district court concluded that McNeal had failed to establish negligence on the part of the defendant and dismissed the action on the merits. From that decision, McNeal appeals and we affirm.

On May 3, 1977, the plaintiff, after giving birth to her second child, expressed a desire to have no more children and requested that she be sterilized. Two days later she underwent a bilateral tubal ligation performed by Doctors D. J. Hall and R. L. Hickok. After the surgery, Dr. Hickok

---

* Honorable Clyde H. Hamilton, United States District Judge for the District of South Carolina, sitting by designation.

filed an operation report and submitted two excised portions of the fallopian tubes to the pathology department for examination. A lab report was later filed describing the appearance and condition of each segment.

Around November, 1978, McNeal again became pregnant and in June, 1979, gave birth, without complications, to a healthy female child. Thereafter, McNeal instituted this suit on a theory of wrongful pregnancy seeking $1,000,000.00 in damages for the "expenses in raising and providing for said child until its age of emancipation."

The case was tried without a jury and both sides offered documentary evidence as well as testimony of medical experts. By way of a *de bene esse* deposition Dr. Hickok testified that he closed the left fallopian tube through use of the "Pomeroy" technique whereby the mid-segment of the tube is doubly ligated and the segment distal to the ties is severed and removed, and that the path in the right tube was interrupted by the "Kroener" method in which the distal fimbriated end of the tube is excised and the tube sutured with a non-absorbable suture. To prove negligence, Mrs. McNeal attempted to show, via the operation report filed by Dr. Hickok and the testimony of two medical experts, that neither the right nor left tube was properly ligated in accordance with the procedures described by Dr. Hickok.

The operation report filed after the surgery was not entirely consistent with Dr. Hickok's description of the procedure as it indicated that the left tube was operated on twice and failed to state that the distal fimbriated end of the right tube was removed as required in a Kroener method ligation.[1] The inference that a proper Kroener procedure was not performed on the right tube was bolstered by the testimony of Dr. Marsha Berkeley who performed a laproscopic exam on the plaintiff six months after the birth at issue. Dr. Berkeley stated that, while there was evidence of previous ligation of the right tube, it appeared that the distal fimbriated end of the tube was still present. Furthermore, she testified, in complete contradiction to Dr. Hickok's testimony and operation report, that there was no indication of prior ligation of the left tube. Finally, the plaintiff called Dr. DeWitt True who, relying heavily on Dr. Berkeley's findings, testified that, in his opinion, Kroener and Pomeroy ligations had not been properly performed on the plaintiff's right and left tubes, respectively.

In defense, Dr. Hickok explained the inconsistency between his description of the operation and the operation report saying that the second reference to the "left tube" in the report should have been "right tube" and that the report should have indicated that, after that tube was tied off, the distal fimbriated portion was excised and sent to the pathologist. This explanation was supported by another section of the report and by the lab. report, each indicating that portions of both the right and left fallopian tubes were forwarded to the lab for examination.

Additionally, the government's expert, Dr. Richard Stock, testified that the tissue removed from Mrs. McNeal and sent to the pathology lab indicated that both Pomeroy and Kroener procedures had been properly performed. Dr. Stock further testified that visualization of fallopian tubes through a laproscope, as was done by Dr. Berkeley, is insufficient, in and of itself, to determine if and why a tubal ligation has failed. Finally, Dr. Stock explained that, even if a tubal ligation is properly performed, it is always possible for the ligation to fail so that the patient might conceive a child in the future.

Based upon the foregoing evidence, the district court found that Doctors Hickok

---

1. The operation report read, in relevant part:
    The *left tube* was then identified ... and it was decided at this time to perform a omeroy [sic] tubal ligation on that side. The tube was grasped with a Babcock clamp and ligated with O chrom [sic] suture. The distal nub of the tube was excised. *Next attention was* turned to the right side of the uterus and the *left tube* was identified by its fimbriated extremity and the fimbria crushed with a hemostat followed by two ties of O Tycron suture. The tube was then inspected for hemostasis and found to be satisfactory.... (Emphasis added).

and Hall carried out the proper procedures in performing the sterilization operation and, thus, concluded that the plaintiff failed to meet her burden of proving negligence on the part of the defendant.

Mrs. McNeal appeals, arguing that the district court's finding of no negligence was erroneous. After carefully reviewing the record, however, we believe that the evidence of whether the operation was properly performed was in equipoise. Consequently, we cannot say that the finding of the district court was clearly erroneous and we must, therefore, affirm. *United States v. Warwick Mobile Home Estates, Inc.,* 537 F.2d 1148, 1150 (4th Cir. 1976).

A second issue argued by both sides on appeal is whether the State of Virginia, whose law we must apply in this federal tort claims action, would recognize a cause of action for wrongful pregnancy and permit recovery in a case such as this. On this question, we adopt fully the reasoning of the district court that to permit recovery of the costs of raising a healthy child until it reaches the age of majority would be against public policy. As the trial judge said:

> To allow damages in the instant case would mean that the parents are allowed to retain such benefits as the fun, joy and affection of raising the child, while the defendant is burdened with all the bills. The plaintiff admits that she now wants the child, but she is asking that the Court order the defendant to support the child. It is the opinion of this Court that such damages would be against public policy.

Accordingly, even if negligence had been established by the plaintiff, we believe that recovery should be barred in this case.

For the foregoing reasons, the order of the district court dismissing plaintiff's claim on the merits is affirmed.

AFFIRMED.

ERVIN, Circuit Judge, concurring:

I am in complete agreement with what has been written concerning the district court's finding of no negligence. The evidence on this issue was in conflict and the court's findings thereon were not clearly erroneous, and must be affirmed. However, I disassociate myself from that portion of the opinion speculating about whether the Commonwealth of Virginia would recognize a cause of action for "wrongful birth." I do so because I am convinced that it is neither necessary nor appropriate to address that question in this case.