DONALD MILLER, M.D.

V.

LAURA JOHNSON

Record No. 822020

FUNG MAI HWANG

V.

GERALD J. RUTH, M.D., ET AL.

Record No. 841536

April 25, 1986

Present: All the Justices

*Robert A. Rapaport (H. H. Hunter Clarke; Harlan, Knight, Dudley & Pincus,* on briefs), for appellant (Record No. 822020).
*William L. Perkins, III (Michael Wayne Price; Price & Perkins,* on brief), for appellee (Record No. 822020).

*John B. Spiers, Jr. (Spiers and Spiers*, on brief), for appellant (Record No. 841536).

*L. Thompson Hanes (George W. Wooten; Woodward, Fox, Wooten & Hart, P.C.*, on brief), for appellees (Record No. 841536).

COCHRAN, J., delivered the opinion of the Court.

The appeal in each of these cases arises from an action by a mother against a physician for damages from what has been characterized as "wrongful pregnancy." In each case, the mother sought an abortion, the abortion failed, and subsequently a child was born. In each case, the mother sought to recover damages related to the unsuccessful abortion, the continuing pregnancy, and the childbirth and, in addition, the costs of rearing the child to majority.

In one case, the trial court entered judgment on the jury verdict awarding damages under an instruction permitting consideration of all these elements. In the other case, the trial court sustained a demurrer to the motion for judgment on the ground that no such action could be maintained. The appeals, therefore, coming from opposite results in the respective trial courts, present the question whether a cause of action for wrongful pregnancy is maintainable in Virginia and, if so, the damages recoverage in such an action.

## LAURA JOHNSON

For economic reasons, Laura Johnson — a mother of four children, the oldest physically handicapped — and her husband sought to avoid having any more children. She consulted Dr. Donald Miller, an obstetrician and gynecologist, who agreed to perform a tubal ligation. Because she was then being treated for a vision problem with a drug which might cause complications, Miller delayed the sterilization operation. In September 1979, Johnson learned she was pregnant and asked Miller to perform an abortion and the sterilization procedure. In October, he performed a bilateral tubal ligation and attempted to perform a suction abortion. Miller noticed nothing unusual about her condition when he examined her a week later. A pathology report on the material removed during the attempted abortion, which showed the abortion was not successfully completed, was sent to Miller's office and filed without first being reviewed by a physician in his office. In

November, Johnson telephoned Miller complaining of nausea and, upon examination, she was found still to be pregnant.

Johnson was advised by both Miller and a second doctor that neither could perform a suction abortion at this stage of her pregnancy. The second doctor testified he presented Johnson with the options of going elsewhere for a suction abortion, having a more dangerous saline abortion, or continuing the pregnancy. Johnson denied that he told her that a second suction abortion was still possible. Johnson decided to continue the pregnancy and gave birth in May 1980 to a healthy, normal boy. She and her husband did not consider placing the child for adoption.

In December 1980, Johnson filed suit against Miller, alleging that his negligence resulted in the wrongful birth of her son. A jury heard the case and was instructed that, upon a finding of negligence, it could award damages for Johnson's past and future pain and suffering, inconvenience, and medical expenses, her past loss of wages related to the pregnancy and birth, and the reasonable costs of rearing the child to the age of 18 years. The jury awarded Johnson $100,000, and the trial court entered judgment on this verdict. On appeal, Miller challenges only the allowance of damages for the costs of rearing the child to majority.

## FUNG MAI HWANG

Fung Mai Hwang and Yuh Chin Hwang, her husband, brought an action against Gerald J. Ruth, M.D., and Gerald J. Ruth, M.D., P.C., a professional corporation of which Gerald J. Ruth, M.D., was an employee, alleging, *inter alia*, that Ruth's negligent attempt to perform an abortion on Fung Mai Hwang was unsuccessful and resulted in the birth of her child. She sought damages for her lost wages, pain and suffering, expenses of pregnancy and childbirth, and the costs of rearing the child to majority. Yuh Chin Hwang also sought damages. The Hwangs did not allege that the child was healthy, nor did they allege to the contrary. Defendants filed a motion to dismiss and a demurrer based on several grounds, one of which was that the law does not recognize a cause of action for the "alleged wrongful birth of a healthy child." On Yuh Chin Hwang's motion, he was nonsuited as a party plaintiff.

The trial court sustained the demurrer and dismissed the action with prejudice, concluding that public policy prohibits recovery of damages for the birth of a healthy child. On appeal, Fung Mai

Hwang challenges this ruling and, in addition, contends that the trial court erred in dismissing her action in which she also sought damages for negligence in performing an abortion, failure to obtain informed consent to a medical procedure, failure to provide proper post-treatment care, and failure to perform the abortion properly and terminate the pregnancy as agreed.

## THE LAW

Some confusion has existed in the terminology applied to the relatively new field of tort law involving actions in which negligence is alleged to have resulted in the birth of a child. The terms "wrongful birth," "wrongful life," "wrongful pregnancy," and "wrongful conception" have gained recent acceptance and distinguish the various birth-related tort actions.

A wrongful birth action is brought by parents on their own behalf, seeking damages resulting from the birth of a defective child after a failed abortion or the failure of a physician to advise the parents of risk of genetic or birth defects and thereby allow an informed decision as to termination of the pregnancy. *See Naccash* v. *Burger*, 223 Va. 406, 409, 290 S.E.2d 825, 826-27 (1982) (action for wrongful birth of child afflicted with Tay-Sachs disease).

A wrongful life action is a similar action brought by or on behalf of the defective child for the physician's failure to warn of potential defects or failure to prevent or terminate the pregnancy in light of known risks. Most courts have rejected this theory that the life of the defective child is worth less than the child's nonexistence. *See, e.g., Elliott* v. *Brown*, 361 So. 2d 546, 548 (Ala. 1978); *Blake* v. *Cruz*, 108 Idaho 253, 259-60, 698 P.2d 315, 322 (1984); *Becker* v. *Schwartz*, 46 N.Y.2d 401, 412, 386 N.E.2d 807, 812, 413 N.Y.S.2d 895, 900 (1978); *Azzolino* v. *Dingfelder*, 315 N.C. 103, 109, 337 S.E.2d 528, 533 (1985); *Nelson* v. *Krusen*, 678 S.W.2d 918, 925 (Tex. 1984); *Dumer* v. *St. Michael's Hospital*, 69 Wis. 2d 766, 773, 233 N.W.2d 372, 375-76 (1975); *Beardsley* v. *Wierdsma*, 650 P.2d 288, 292 (Wyo. 1982). Those few courts allowing wrongful life claims have limited the damages recoverable to the extraordinary expenses attributable to the child's impaired condition. *See, e.g., Turpin* v. *Sortini*, 31 Cal. 3d 220, 237, 643 P.2d 954, 965, 182 Cal. Rptr. 337, 348-49 (1982); *Procanik* v. *Cillo*, 97 N.J. 339, 352, 478 A.2d 755,

762 (1984); *Harbeson* v. *Parke-Davis, Inc.*, 98 Wash. 2d 460, 475, 656 P.2d 483, 496-97 (1983).

Wrongful conception and wrongful pregnancy actions are suits by parents for damages arising from the negligent performance of a sterilization procedure or an abortion and the subsequent birth of a child. *See Boone* v. *Mullendore*, 416 So. 2d 718, 720 (Ala. 1982); *University of Ariz.* v. *Superior Court*, 136 Ariz. 579, 581 n.1, 667 P.2d 1294, 1296 n.1 (1983); *Garrison* v. *Foy*, 486 N.E.2d 5, 7 (Ind. Ct. App. 1985); *Nanke* v. *Napier*, 346 N.W.2d 520, 521 (Iowa 1984); *Kingsbury* v. *Smith*, 122 N.H. 237, 240, 442 A.2d 1003, 1004 (1982). These actions most frequently have involved normal, healthy children, although they may involve children with a disease or abnormality where the disease or abnormality was not foreseeable and its prevention was not the purpose of the failed abortion or sterilization procedure. *See, e.g., Garrison*, 486 N.E.2d at 7; *see also Boone*, 416 So. 2d at 723 (court expressly restricted holding in wrongful pregnancy case, reserving decision on the measure of damages in cases involving children "born and afflicted with *predetermined or readily foreseeable genetic or hereditary defects*").

The trial court in *Hwang* (Record No. 841536) relied on dicta in *McNeal* v. *United States*, 689 F.2d 1200, 1202 (4th Cir. 1982), predicting that Virginia would not permit recovery of damages for wrongful pregnancy as a matter of public policy. Such reliance is misplaced.

We have held that whether a cause of action exists for wrongful birth, where the child is fatally defective, is a question to be determined in accordance with traditional tort principles. *Naccash*, 223 Va. at 413, 290 S.E.2d at 829. Holding such an action exists, we approved damages for the extraordinary care and treatment of the fatally defective child during the 31 months of her life. *Id.* at 414, 290 S.E.2d at 829-30. We reaffirm the inclusion of the expenses of such care and treatment as allowable damages in a wrongful birth case. We see no reason not to apply traditional tort principles to determine whether a cause of action exists for wrongful pregnancy or wrongful conception, where the child is reasonably healthy, both physically and mentally.

Within specified limits a woman is entitled to have an abortion if she so chooses. *See Roe* v. *Wade*, 410 U.S. 113, 153-54 (1973); Code §§ 18.2-71 to -76.2. Individuals are likewise free to practice contraception to further their constitutionally-protected choice not

to have children. *See Eisenstadt* v. *Baird*, 405 U.S. 438, 453-54 (1972); *Griswold* v. *Connecticut*, 381 U.S. 479, 485-86 (1965).

■ Under traditional tort principles, it is clear that a physician who performs an abortion or sterilization procedure owes a legal duty to the patient. Where the patient can establish failure to perform the procedure with reasonable care and damages proximately resulting from breach of the duty, she is entitled to recover as in any other medical malpractice action. *See Naccash*, 223 Va. at 414, 290 S.E.2d at 829-30; *Fulton-DeKalb Hosp. Authority* v. *Graves*, 252 Ga. 441, 443, 314 S.E.2d 653, 654 (1984); *Jones* v. *Malinowski*, 299 Md. 257, 263, 473 A.2d 429, 432 (1984); *Sherlock* v. *Stillwater Clinic*, 260 N.W.2d 169, 174-75 (Minn. 1977); *Kingsbury*, 122 N.H. at 242, 442 A.2d at 1005-06; *Mason* v. *Western Pennsylvania Hosp.*, 499 Pa. 484, 486, 453 A.2d 974, 975 (1982); *James G.* v. *Caserta*, 332 S.E.2d 872, 876 (W. Va. 1985); *Beardsley*, 650 P.2d at 292. As the New Hampshire court reasoned:

> Non-recognition of any cause of action for wrongful conception [or wrongful pregnancy] leaves a void in the area of recovery for medical malpractice and dilutes the standard of professional conduct and expertise in the area of family planning, which has been clothed with constitutional protection.

*Kingsbury*, 122 N.H. at 242, 442 A.2d at 1005-06 (citations omitted); *accord Garrison*, 486 N.E.2d at 8. Accordingly, we hold that an action for wrongful pregnancy or wrongful conception may be maintained in Virginia.

■ What then is the proper measure of damages in a wrongful pregnancy action where the child is born reasonably sound and healthy? Under traditional tort principles, which we held to be applicable in *Naccash*, recoverable damages are those which are the reasonable and proximate consequences of the breach of duty.[1] 223 Va. at 414, 290 S.E.2d at 830. The mother, therefore, may recover damages, if proven, for medical expenses, pain and suffer-

---

[1] In *Naccash*, the basis of our holding that extraordinary costs were recoverable was that parents of a fatally defective child could recover costs of care and treatment as "consequences that a reasonable and informed person could have foreseen or anticipated." 223 Va. at 414, 290 S.E.2d at 830. We did not decide in that case whether such damages would be recoverable upon the birth of a defective or diseased child when the defect or disease was not reasonably foreseeable.

ing, and lost wages for a reasonable period, directly resulting from the negligently performed abortion, the continuing pregnancy, and the ensuing childbirth. The mother is also entitled under the general rule to recover damages, if proven, for emotional distress causally resulting from the tortiously caused physical injury. *See Naccash*, 223 Va. at 416, 290 S.E.2d at 831; *Hughes v. Moore*, 214 Va. 27, 34, 197 S.E.2d 214, 219 (1973).

The divisive issue which has troubled the courts, however, is whether, in a wrongful pregnancy action, allowable damages may include the expenses of rearing the healthy child to the age of majority. A substantial majority of jurisdictions exclude such child-rearing expenses. *See Boone v. Mullendore*, 416 So. 2d 718 (Ala. 1982); *Wilbur v. Kerr*, 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison*, 349 A.2d 8 (Del. 1975); *Flowers v. District of Columbia*, 478 A.2d 1073 (D.C. 1984); *Fassoulas v. Ramey*, 450 So. 2d 822 (Fla. 1984); *Fulton-DeKalb Hosp. Authority v. Graves*, 252 Ga. 441, 314 S.E.2d 653 (1984); *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 447 N.E.2d 385, *cert. denied sub nom. Raja v. Michael Reese Hosp. & Med. Center*, 464 U.S. 846 (1983); *Garrison v. Foy*, 486 N.E.2d 5 (Ind. Ct. App. 1985); *Nanke v. Napier*, 346 N.W.2d 520 (Iowa 1984); *Byrd v. Wesley Medical Center*, 237 Kan. 215, 699 P.2d 459 (1985); *Schork v. Huber*, 648 S.W.2d 861 (Ky. 1983); *Macomber v. Dillman*, 505 A.2d 810 (Me. 1986); *Kingsbury v. Smith*, 122 N.H. 237, 442 A.2d 1003 (1982); *P. v. Portadin*, 179 N.J. Super. 465, 432 A.2d 556 (1981); *O'Toole v. Greenberg*, 64 N.Y.2d 427, 477 N.E.2d 445, 488 N.Y.S.2d 143 (1985); *Mason v. Western Pennsylvania Hosp.*, 499 Pa. 484, 453 A.2d 974 (1982); *Hickman v. Myers*, 632 S.W.2d 869 (Tex. Ct. App. 1982); *McKernan v. Aasheim*, 102 Wash. 2d 411, 687 P.2d 850 (1984); *James G. v. Caserta*, 332 S.E.2d 872 (W. Va. 1985); *Rieck v. Medical Protective Co. of Fort Wayne, Ind.*, 64 Wis. 2d 514, 219 N.W.2d 242 (1974); *Beardsley v. Wierdsma*, 650 P.2d 288 (Wyo. 1982).

The rationale for denying recovery for child-rearing expenses varies from court to court. Many courts have held that the birth of a normal, healthy child is not a compensable injury. *See, e.g., Boone*, 416 So. 2d at 721; *Fassoulas*, 450 So. 2d at 823-24; *Fulton-DeKalb*, 252 Ga. at 444, 314 S.E.2d at 655-56; *Cockrum*, 95 Ill. 2d at 202-03, 447 N.E.2d at 389; *Nanke*, 346 N.W.2d at 522-23; *Byrd*, 237 Kan. at 225, 699 P.2d at 468; *Macomber*, 505

A.2d at 813; *O'Toole*, 64 N.Y.2d at 429, 477 N.E.2d at 448, 488 N.Y.S.2d at 146; *Hickman*, 632 S.W.2d at 871; *Beardsley*, 650 P.2d at 293. These courts have reasoned that as a matter of law the benefits derived from the birth of a normal, healthy child outweigh the expenses of rearing the child. *See Cockrum*, 95 Ill. 2d at 200-01, 447 N.E.2d at 389; *Public Health Trust v. Brown*, 388 So. 2d 1084, 1085-86 (Fla. Ct. App. 1980), *pet. for rev. denied*, 399 So. 2d 1140 (Fla. 1981).

Other courts as a matter of policy have denied recovery to avoid what they believed would otherwise be an unreasonable burden on the tortfeasor and an unjustified windfall for the parent or parents who would retain the parental benefits but transfer the financial responsibility to another. *See, e.g.*, *Kingsbury*, 122 N.H. at 243, 442 A.2d at 1006; *Hickman*, 632 S.W.2d at 871; *Rieck*, 64 Wis. 2d at 518-19, 219 N.W.2d at 244-45; *Beardsley*, 650 P.2d at 292. Thus, these courts conclude that the result would be disproportionate to the degree of culpability.

Some courts, concerned about the emotional or psychological harm to the child upon his discovery that he was unwanted and worth less to his parents than the costs of his care, conclude as a matter of policy that allowance of child-rearing expenses will undermine society's need for strong family relationships. *See, e.g.*, *Boone*, 416 So. 2d at 722; *Wilbur*, 275 Ark. at 244, 628 S.W.2d at 571; *McKernan*, 102 Wash. 2d at 421, 687 P.2d at 855-56. A few courts have based denial of recovery of child-rearing costs in part on the fear of a proliferation of fraudulent claims. *See, e.g.*, *Rieck*, 64 Wis. 2d at 517, 219 N.W.2d at 245; *Beardsley*, 650 P.2d at 292.

Other courts have concluded that the principle of tort law prohibiting recovery of remote or speculative damages precludes recovery for child-rearing expenses. *See, e.g.*, *Boone*, 416 So. 2d at 722; *Coleman*, 349 A.2d at 12; *Schork*, 648 S.W.2d at 863; *Sorkin v. Lee*, 78 A.D.2d 180, 181, 434 N.Y.S.2d 300, 303 (1980); *Terrell v. Garcia*, 496 S.W.2d 124, 127-28 (Tex. Civ. App. 1973), *cert. denied*, 415 U.S. 927 (1974); *McKernan*, 102 Wash. 2d at 419, 687 P.2d at 855; *James G.*, 332 S.E.2d at 878.

A minority of jurisdictions addressing this issue have concluded that the costs of rearing the child to majority are recoverable as the proximate result of the physician's negligence in performing the sterilization procedure or abortion. Applying the rule of tort law which requires any benefit conferred by the tortious conduct

to be considered in mitigation of damages, *see* Restatement (Second) of Torts § 920 (1979), these courts have limited the recovery of child-rearing expenses by requiring that they be offset by the value of any benefits conferred on the parents by the existence of the child.[2] *See University of Ariz.* v. *Superior Court,* 136 Ariz. 579, 584, 667 P.2d 1294, 1299 (1983); *Stills* v. *Gratton,* 55 Cal. App. 3d 698, 709, 127 Cal. Rptr. 652, 658-59 (1976); *Ochs* v. *Borrelli,* 187 Conn. 253, 260-61, 445 A.2d 883, 885-86 (1982); *Jones* v. *Malinowski,* 299 Md. 257, 273-74, 473 A.2d 429, 437 (1984); *Green* v. *Sudakin,* 81 Mich. App. 545, 548, 265 N.W.2d 411, 412 (1978) (unperformed tubal ligation), *following Troppi* v. *Scarf,* 31 Mich. App. 240, 261, 187 N.W.2d 511, 517-19 (improperly filled prescription for birth control pills), *leave to appeal denied,* 385 Mich. 753 (1971); *Sherlock* v. *Stillwater Clinic,* 260 N.W.2d 169, 176 (Minn. 1977).

We find the cases permitting recovery of child-rearing expenses unpersuasive. The parent is placed in the degrading position of disparaging her child to establish that the expenses of rearing him exceed the benefits derived from his existence. Moreover, in addition to the "benefits rule" there is the rule that a plaintiff must act reasonably to minimize her damages. *Lawrence* v. *Wirth,* 226 Va. 408, 412, 309 S.E.2d 315, 317 (1983); *Haywood* v. *Massie,* 188 Va. 176, 182, 49 S.E.2d 281, 284 (1948); Restatement, *supra,* § 918. Application of this principle may raise an issue whether the plaintiff should have submitted to another abortion or should have placed the child for adoption.

■ We conclude that the costs of rearing a reasonably healthy child to majority are not recoverable in a wrongful pregnancy or wrongful conception action. We do not presume, however, to base

---

[2] Some courts have stated that *Bowman* v. *Davis,* 48 Ohio St. 2d 41, 356 N.E.2d 496 (1976), and *Custodio* v. *Bauer,* 251 Cal. App. 2d 303, 59 Cal. Rptr. 463 (1967), allow full recovery of child-rearing costs without any offset of the value of benefits received. In *Bowman,* however, the court expressly declined to rule on the issue whether damages should be limited to the expenses of the pregnancy because that issue was not properly before the court. 48 Ohio St. 2d at 44 n.1, 356 N.E.2d at 498 n.1. Furthermore, in *Custodio,* the court had an insufficient record to determine the damages to which the parents would be entitled, and it is therefore unclear whether an offset would have been allowed. 251 Cal. App. 2d at 325-26, 59 Cal. Rptr. at 477-78. With respect to a separate element of damages, however, the court noted the "benefits rule" and acknowledged that offset would be appropriate. *Id.* at 323, 59 Cal. Rptr. at 476. The later case of *Stills* v. *Gratton* approved the *Custodio* holding allowing recovery of child-rearing costs but required an offset for benefits conferred. 55 Cal. App. 3d 698, 709, 127 Cal. Rptr. 652, 658-59.

our ruling on public policy. We are unwilling to hold that as a matter of law the birth of a child, even a healthy, normal child, can never result in tortious injury to the parents. Moreover, we deem it inappropriate for us to weigh the potential impact on a child of litigation in which his parents seek to impose on another the expenses of rearing him. Such policy decisions are best left to the General Assembly. Nor do we base our holding on a fear that fraudulent claims may be brought or that damages disproportionate to the tort may be awarded; we trust that our jury system could effectively prevent such occurrences. *See McKernan*, 102 Wash. 2d at 418, 687 P.2d at 854. To the contrary, we rely on traditional principles of tort law.

■ Damages which cannot be established with reasonable certainty are speculative or conjectural and may not be recovered. *Cassady* v. *Martin*, 220 Va. 1093, 1100, 266 S.E.2d 104, 108 (1980); *Phillips* v. *Stewart*, 207 Va. 214, 221, 148 S.E.2d 784, 789 (1966); *Barnes* v. *Quarries, Inc.*, 204 Va. 414, 418-19, 132 S.E.2d 395, 397-98 (1963). We conclude that a court or jury is not capable of determining with any reasonable certainty the costs of bringing a child to maturity less the offsetting value of the child's life.

■ Juries may routinely determine the damages resulting from a life that has been terminated or permanently injured. But even those courts that allow recovery of damages for the expenses of child-rearing concede the difficulty of determining the value of the offsetting benefits from the child's life. *See, e.g., Troppi*, 31 Mich. App. at 261, 187 N.W.2d at 521. Nevertheless, they are willing to impose this burden on juries. We are unwilling to do so because of our conclusion that the results would necessarily be based on speculation and conjecture. Who, indeed, can strike a pecuniary balance between the triumphs, the failures, the ambitions, the disappointments, the joys, the sorrows, the pride, the shame, the redeeming hope that the child may bring to those who love him?

## CONCLUSION

Donald Miller, M.D. v. Laura Johnson (Record No. 822020).

We will reverse the judgment of the trial court and remand the case for a new trial limited to the issue of damages consistent with the views herein expressed.

Fung Mai Hwang v. Gerald J. Ruth, M.D., et al. (Record No. 841536).

We will reverse the judgment of the trial court and remand the case for further proceedings consistent with the views herein expressed.

*Record No. 822020 - Reversed and remanded.*
*Record No. 841536 - Reversed and remanded.*

RUSSELL, J., dissenting:

I would deny recovery in these cases because of the failure of the plaintiffs to prove that they have suffered compensable injuries. In the final paragraph of the majority opinion, the court notes the futility of requiring juries to weigh the burdens of parenthood against the joys and benefits arising from a child's life. The majority opinion rejects the plaintiffs' claims for damages for the expenses of rearing their children to maturity because a balance between the burdens and the offsetting benefits of parenthood could only be reached by speculation and conjecture. I fully agree.

Yet the majority, illogically it seems to me, permits recovery for medical expenses, pain, suffering, lost wages, and emotional distress arising from the defendant physicians' failure to prevent the birth of healthy, normal children. Are these "injuries" not to be offset by the pleasures and benefits of parenthood? The thought that a balance exists between the burdens of childbirth and the joy of motherhood is hardly new.*

If there are benefits resulting to parents from the birth of healthy, normal children, as the majority evidently believes, why should the defendants not be entitled to an offset for such benefits against the plaintiffs' claimed damages arising from childbirth, just as they would be entitled to offset them against the expense of rearing the children to maturity? The majority rejects the latter as too speculative and conjectural for the fact-finding process. Yet pain, suffering, and mental anguish, which the majority permits, are more subjective and less susceptible of precise calculation than

---

* "A woman when she is in travail hath sorrow, because her hour is come: but as soon as she delivereth the child, she remembereth no more the anguish, for joy that a man is born into the world." *John* 16:21.

the actual expenses of rearing children. In my view, damages for the claimed plaintiffs' injuries resulting from the birth of healthy, normal children should be disallowed for the same reason the majority disallows damages for the expense of rearing children to maturity.

In *Naccash* v. *Burger*, 223 Va. 406, 290 S.E.2d 825 (1982), we applied traditional tort principles to a claim arising from the birth of a fatally afflicted child. There, the defendant's negligence resulted in an occurrence which a jury could fairly compensate as a calamitous injury to the parents. But who is to say whether, in the long run, the birth of a healthy, normal child is a disaster or a blessing?

It is fundamental to tort law that no breach of duty, however egregious, is actionable unless it is the proximate cause of an injury to the plaintiff. Who is to say if these plaintiffs have suffered an injury, and if so, to what degree? How many years must pass before the answer can be determined? Accordingly, I would reverse *Miller* v. *Johnson* and affirm *Hwang* v. *Ruth*, entering final judgments for the defendants in both cases.