## CIRCUIT COURT OF FAIRFAX COUNTY

Cordell C. Smith

v.

Bernard Scott Teunis and
Plastic Surgery Associates, P.C.

May 25, 1989

Case Nos. (Law) 84329 and 86271

By JUDGE F. BRUCE BACH

This case is before the Court on the motions for summary judgment by the defendants, Bernard Scott Teunis and Plastic Surgery Associates, P.C., to Cordell C. Smith's amended motion for judgment in At Law No. 84329 and motion for judgment in At Law No. 86271. The case arises out of an alleged illicit affair between Smith's former wife and Teunis, a plastic surgeon. Smith alleges that his wife and Teunis had an extramarital affair during her treatment for breast reconstruction surgery. According to the motions for judgment, the affair began in October, 1977, and resulted in the birth of a daughter to Smith's former wife on June 27, 1979. Smith did not learn until some time later that Teunis was the biological father of the child. Teunis and his wife were divorced, and Smith and his wife were also divorced. Teunis subsequently married Mr. Smith's former wife.

Smith filed a motion for judgment based upon these facts, and Teunis's demurrer was sustained in part and overruled in part. Smith then filed an amended motion for judgment to which Teunis again demurred. This demurrer was overruled, and Teunis filed this motion for summary judgment.

Smith also filed a claim for medical malpractice. Teunis filed a plea of the statute of limitations, which was ordered by the court to be considered on the merits as a motion for summary judgment.

The court heard arguments on these motions on March 27, 1989. The court has also considered the memoranda submitted by counsel as well as the supplemental briefs on public policy. For the reasons that follow, Teunis's motions are sustained in part and overruled in part.

The amended motion for judgment in the first case contains three counts. The first is a fraud count against Teunis's corporation based upon allegations that the employees facilitated the affair and then concealed it from Smith. The second count alleges that Teunis fraudulently represented that Smith was the father of the former Mrs. Smith's daughter. The third count alleges intentional infliction of emotional distress.

The court has considered the issues argued by the attorneys in the first set of memoranda. The statute of limitations argument addressed to the fraud claims cannot be the basis for summary judgment because there is a factual issue in dispute. The court cannot rule as a matter of law that Smith "knew or should have known" of the fraud when he discovered the affair on August 12, 1986. This is a fact question which can only be decided after consideration of all of the evidence. *Gilmore v. Basic Industries*, 233 Va. 485 (1987).

As to the second fraud count, Smith is not "judicially estopped" from claiming that he is not the child's father, even though he claimed otherwise in his divorce case. There is no evidence that Smith knew at the time of the earlier action that he was the child's father. Furthermore, Smith's failure to admit that he is not the child's father is not fatal to his claim at this point. In the first set of briefs, Teunis argues that the case should be dismissed because a court cannot determine damages when it must weigh the expenses of raising a child against the benefits.

Teunis also argues that the court is an improper forum for interfamilial warfare. This court is concerned as to whether this case can be distinguished from other adultery cases. Any extramarital affair by its very nature involves fraud in its concealment and causes emotional distress if it is discovered. If Smith has a cause of action, the floodgates would be open for similar cases, and this kind of suit would become satellite litigation in all adultery cases.

This case is essentially an action for alienation of affections, which has been abolished by Va. Code Section 8.01-220 (1950). The court has considered the admonition by the United States Court of Appeals in *Raftery v. Scott*, 756 F.2d 335 (4th Cir. 1985), that "the fact that a tort may have overtones of affection alienation does not bar recovery on the separate and distinct accompanying wrongdoing." However, *Raftery* does not suggest that the trial court must sustain all claims merely because they are couched in the language of another theory of recovery. A court must make an independent determination as to whether another cause of action has been sufficiently pled.

The gravamen of the tort of alienation is that the plaintiff has been deprived of his rights to his spouse's consortium, society, affections, and assistance by the tortious conduct of the defendant. The damages are for the loss of consortium as well as for his mental agony and humiliation. *See generally* 41 Am. Jur. 2d *Husband and Wife* § 463 *et seq.* (1988). Smith has alleged that he was married, that his wife had an affair, that he was eventually divorced, and that he suffered emotional trauma as a result of this. All of these allegations fall within the alienation tort. *See, e.g., Nicholson v. Han*, 162 N.W.2d (Mich. 1968). Any doubt is resolved by Smith's specific allegation that as a result of the "transference phenomenon," Smith's former wife began to feel admiration, respect, and affection toward Teunis, which emotions would properly have been directed toward Smith. Amended motion for judgment at paragraph 16.

If this case proceeds, it would be subject to the same difficulties which were the basis for abolishing the alienation tort. Specifically, the claim presents an opportunity for extortion or blackmail, disregards the volitional act of Smith's wife in terminating the

marriage and denigrates the institution of marriage by making a forced sale of marital affections. *Van Meter v. Van Meter*, 328 N.W.2d 497 (Iowa 1983) (dissenting opinion); *see also*, *Lund v. Caple*, 675 P.2d 226 (Wash. 1984).

Legislatures have several other reasons for abolishing this cause of action. One problem is that even meritorious claims are more often than not brought with purely vindictive motives. Second, "heart balm" damages cannot properly compensate for this kind of harm. Furthermore, these cases do not serve as a deterrent to such conduct because these torts are seldom committed with a deliberate plan. These cases are also inconsistent with the modern view that each spouse is autonomous and neither is the property of the other. Finally, the legislatures have acknowledged that a home that has already been broken is not worth maintaining. *See* W. Keeton, *Prosser and Keeton on the Law of Torts* § 124, at 929 (5th ed. 1984).

If the court allows this case to proceed, it would violate the public policy which favors the institution of marriage. The premise behind this case is that a paramour has a duty to confess an extra-marital affair to the spouse of the other participant. To impose such a duty can only lead to marital disruption, not to marital harmony. Furthermore, the paramour would be required to choose between concealing the affair and risking a fraud claim and revealing the affair and facing a possible claim for intentional infliction of emotional distress. The legislature has set the public policy concerning this type of conduct. A person who commits adultery is subject to criminal prosecution pursuant to Va. Code § 18.2-365 (1950). The General Assembly has specifically abolished the civil cause of action in Va. Code § 8.01-220 (1950). This suit would hinder rather than promote Virginia public policy.

Smith has asserted two bases upon which to distinguish this case from the "garden variety" adultery case. First, the conduct resulted in the birth of a child. This fact is not unique but would undoubtedly preclude an avalanche of cases. However, the fact that the child is claimed as part of the damages raises additional troubling issues which have been discussed in related cases.

In *Miller v. Johnson*, 231 Va. 177 (1986), our Supreme Court struggled with the issue of damages in a "wrongful

birth" context. The court expressed concern that the parent would be placed in the position of disparaging the child in order to establish that the expenses of rearing him exceeded the benefits derived from his existence. The court concluded that the costs of rearing a reasonably healthy child to majority are not recoverable in a wrongful pregnancy action because "a court or jury is not capable of determining with any reasonable certainty the costs of bringing a child to maturity less the offsetting value of the child's life." *Id.* at 187.

Smith argues that the damages are not speculative in this case because he only asks for the costs of raising the child up to the time of his discovery of the child's true parentage. The damages have already occurred, he asserts, so they are not speculative. I am not convinced that a jury would be able to ascertain damages. The fact finder would still be required to weigh the "benefits" of having the child against the expenses of raising him.

The recent case of *Ruth v. Fletcher*, 237 Va. 366, (1989), also concerned damages for the birth of a healthy child, in a context closer to the one at issue here. In *Ruth*, the plaintiff asked for damages for intentional infliction of emotional distress because his girlfriend told him that she was pregnant with his child and fostered a bond of affection between him and the child. She also had him pay monthly support and told his parents that the child was their grandchild. She did not tell him he was not the father until she married another man and wanted her husband to adopt the child. The court reversed the award based upon a ruling that:

> there is no proof that she set out to convince [the plaintiff] that the child was his, and to cause him to develop a loving relationship with the child so that in the end, she could hurt [the plaintiff] by taking the child away from him forever.

*Ruth* makes it clear that in order to recover for distress, Smith would have to prove that Teunis set out to convince Smith that the child was his in order to hurt him later by telling him the truth. This is contradicted by the pleadings which allege an elaborate deception

designed to keep Smith from finding out the truth. Therefore, the court declines to allow this case to proceed because of the allegations concerning the child.

The other basis suggested by Smith to distinguish this case is that it occurred in the context of a physician-patient relationship. Smith alleges that Teunis used the confidential information obtained in this relationship to his own benefit, mishandled the transference phenomenon and carried on the affair under the pretense of providing medical treatment. These allegations are sufficient to differentiate this from the ordinary adultery case. A physician has a special duty of care to his patient. While the court is hesitant to categorize this as a "fiduciary" duty, the relationship nonetheless gives rise to an obligation on the part of the doctor to act in his patient's best interest and not to his detriment. The conduct complained of is inconsistent with this obligation. Therefore, the medical malpractice action may proceed. Notwithstanding this finding, the court takes no position on the factual dispute as to whether Smith was ever a patient of Teunis. This is a threshold factual issue to be resolved in the malpractice case.

Teunis has also filed a motion for summary judgment based upon the statute of limitations in the malpractice action. The statute of limitations issue cannot be resolved by summary judgment because there are issues of fact in dispute. Smith has alleged that Teunis concealed the affair, and therefore, the applicable rule is that the case must be brought "within one year from the date the inquiry is discovered or, by the exercise of due diligence, reasonably should have been discovered." Va. Code § 8.01-243 (1950). The parties are in dispute as to when the malpractice should have been discovered. In addition, Smith argues that the "continuing treatment" rule applies here. However, *Farley v. Goode*, 219 Va. 964 (1979), requires the course of treatment to be proved as a matter of fact. Finally, there is a factual dispute as to whether Smith was ever Teunis's patient and whether he was a patient when the malpractice was discovered. Therefore, the statute of limitations issue must be resolved at a later time.

For these reasons, all of the claims except for the medical malpractice are dismissed.