THOMASINE B. McALLISTER AND EDWARD McALLISTER, PLAINTIFFS V.
KHIE SEM HA, M.D., DEFENDANT

No. COA96-850

(Filed 20 May 1997)

**1. Abortion; Prenatal or Birth-Related Injuries and Offenses § 24 (NCI4th)— genetic testing—failure to inform of results—"wrongful conception"—sufficient allegations**

In a medical malpractice case where defendant physician failed to inform plaintiff parents of the results of their genetic testing indicating their increased risk of bearing a child with sickle cell disease, plaintiffs' complaint was sufficient to support a claim for "wrongful conception" where the complaint alleged that defendant owed plaintiffs a duty to provide the information to allow them an opportunity to make an informed decision about whether to have children, and that plaintiff wife thereafter became pregnant and gave birth to a child with a sickle cell disease.

**Am Jur 2d, Prenatal Injuries, Wrongtul Life, Birth, or Conception §§ 109, 111.**

**2. Abortion; Prenatal or Birth-Related Injuries and Offenses § 24 (NCI4th)—wrongful conception—sickle cell disease— damages recoverable**

Parents who are successful in a claim for "wrongful conception" of a child with a sickle cell disease may recover expenses associated with the pregnancy, damages for emotional distress causally resulting from the wrongful conception, and damages for the extraordinary care (in excess of the cost of raising a normal child) involved in the treatment of the child's abnormalities which are the foreseeable consequence of a defendant physician's negligence in failing to inform the parents, prior to conception, of the possibility of such abnormalities.

**Am Jur 2d, Prenatal Injuries, Wrongtul Life, Birth, or Conception §§ 109, 111.**

**3. Abortion; Prenatal or Birth-Related Injuries and Offenses § 24 (NCI4th)— wrongful conception—infliction of emotional distress—sufficient allegations**

Plaintiffs stated a claim for negligent infliction of emotional distress where they alleged that defendant physician failed to

inform them of the results of genetic testing indicating their increased risk of bearing a child with sickle cell disease, that plaintiff wife thereafter became pregnant and gave birth to a child with a sickle cell disease, and that they have sustained severe emotional distress as a result of defendant's negligence.

**Am Jur 2d, Prenatal Injuries, Wrongtul Life, Birth, or Conception §§ 109, 111.**

Appeal by plaintiffs from order dated 21 March 1996 in Robeson County Superior Court by Judge Joe Freeman Britt. Heard in the Court of Appeals 1 April 1997.

*Britt & Britt, P.L.L.C., by William S. Britt, for the plaintiffs.*

*Cranfill, Sumner & Hartzog, L.L.P., by Gregory M. Kash, for defendant.*

GREENE, Judge.

Thomasine and Edward McAllister (collectively plaintiffs) appeal the dismissal of their complaint (pursuant to Rule 12(b)(6)) alleging the negligence of Dr. Khie Sem Ha (defendant). The material allegations of the complaint reveal the following facts: (1) the defendant is a duly licensed physician practicing family medicine; (2) in 1991 the plaintiffs visited the defendant's office to have blood drawn to test "for sickle cell" disease; (3) the defendant told the plaintiffs that "if there was anything to be concerned about, then he would call them" and if they did not hear from him "there was nothing to be concerned about"; (4) the blood test indicated that both of the plaintiffs were sickle cell carriers and there was a "one in four risk of [them] bearing a child with sickle cell disease"; (5) the defendant did not inform the plaintiff of the results of the blood test; (6) Thomasine became pregnant and gave birth to a son on 27 May 1994; and (7) the child has Hemoglobin O Arab, a sickle cell disease.

The complaint further alleges that the defendant was negligent and "wanton and reckless" in failing to communicate the results of the blood test to the plaintiffs and as a consequence they were (1) caused extreme emotional and mental distress; (2) deprived of "an opportunity to make an informed decision as to whether or not to have anymore [sic] children"; and (3) suffered financial loss. The plaintiffs seek compensatory and punitive damages.

The issues are whether the allegations of the complaint are sufficient to support a claim for: (I) medical malpractice where the defendant (physician) failed to inform the plaintiffs (parents) of the results of their genetic testing indicating the couple's increased risk of bearing a child with sickle cell disease; and (II) negligent infliction of emotional distress.

"A motion to dismiss for failure to state a claim upon which relief may be granted under [N.C.Gen. Stat. § 1A-1, Rule 12(b)(6) (1990)] is addressed to whether the facts alleged in the complaint, when viewed in the light most favorable to the plaintiffs, give rise to a claim for relief on any theory." *Ford v. Peaches Entertainment Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986), *cert. denied*, 318 N.C. 694, 351 S.E.2d 746 (1987).

I

[1] The defendant argues that the dismissal of the complaint was proper because it constitutes a "wrongful birth" action and is thus proscribed by *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985). The plaintiffs argue that their claim is one for "wrongful conception" and is permitted by *Jackson v. Bumgardner*, 318 N.C. 172, 358 S.E.2d 489 (1986).

In *Azzolino* the parents alleged that the physician failed to advise them "with respect to the availability of amniocentesis and genetic counseling" and if so advised they "would have had amniocentesis performed" which would have shown that the child would have Down's Syndrome and having that information they would have terminated the pregnancy by an abortion. 315 N.C. at 105, 337 S.E.2d at 530. In rejecting the "wrongful birth" claim the Supreme Court noted several considerations: (1) the injury claimed was the birth of the child and this cannot amount to a legal injury because every life has value, even life with severe defects; *Azzolino*, 315 N.C. at 111, 337 S.E.2d at 535; (2) claim is "peculiarly subject" to fraud because it hinges on testimony of parents given after the birth "concerning their desire prior to the birth to terminate the fetus should it be defective[,]" *id.* at 113, 337 S.E.2d at 535; and (3) claim would increase pressure on physicians to recommend abortion of fetus when genetic imperfections are discovered and "we do not wish to create a claim for relief which will encourage such results." *Id.* at 114, 337 S.E.2d at 528.

In *Jackson* the plaintiff wife was assured by the defendant physician that he had replaced her intrauterine device (IUD) after per-

McALLISTER v. HA

[126 N.C. App. 326 (1997)]

forming a D and C (dilation and curettage). 318 N.C. at 174, 347 S.E.2d at 744. Some months later she discovered that she was pregnant and that the defendant had not replaced the IUD after the surgery. *Id.* The plaintiff (wife and husband) had a "healthy baby." *Id.* The plaintiffs filed an action alleging medical malpractice and "seeking damages for plaintiff wife's pregnancy and for the cost of rearing the new baby." *Id.* In recognizing the claim the *Jackson* Court noted the distinctions between *Azzolino* and *Jackson*: (1) Mrs. Azzolino did not complain about becoming pregnant; (2) Mrs. Jackson sought to avoid her pregnancy; (3) the claimed injury in the *Azzolino* case was to the child; (4) the injury in the *Jackson* case was to the mother; (5) in *Azzolino* the physician was not responsible for the defects in the child; (6) in *Jackson* the physician's alleged negligence contributed to the pregnancy; (7) the plaintiffs claimed in *Azzolino* that had the physician acted properly the fetus would have been aborted; and (8) abortion of a fetus is not an issue in *Jackson*. *Jackson* 318 N.C. at 180-81, 347 S.E.2d at 748.

In this case the plaintiffs allege the defendant owed them a duty to provide information they sought to allow them an opportunity to make an informed decision about whether to have children and that the defendant breached that duty. These allegations are sufficient to allege a claim for "wrongful conception" as that tort has been defined by *Jackson*. The *Jackson* Court did not limit this tort to negligently performed sterilizations and abortions that result in the birth of an unwanted child, as some courts have, *see Miller v. Johnson*, 343 S.E.2d 301, 304 (Va. 1986), but, instead, broadened the tort to include "cases similar to" the facts in that case. *Jackson*, 318 N.C. at 178, 347 S.E.2d at 747. The alleged facts in this case are "similar to" the facts in *Jackson*. In *Jackson* the plaintiffs were seeking to avoid having a child. In this case the plaintiffs were seeking information that would have assisted them in deciding whether to have another child. We acknowledge one major distinction between the facts in *Jackson* and the facts in this case: the child in Jackson was born healthy and the child in this case was born with impairments. This distinction, however, does not transform the plaintiffs' claim into one for "wrongful birth." In a "wrongful birth" action, as defined by *Azzolino*, the medical treatment rendered by the physician "deprives the parents of the opportunity of deciding to abort a deformed fetus." *Jackson*, 318 N.C. at 180, 347 S.E.2d at 748. In this case, as in *Jackson*, the plaintiff wife carried the child to term and the child was born and there is no allegation that the acts of the physician precluded her from having an abortion. A "wrongful conception" claim exists not only when a nor-

mal child is born but also when a child is born with impairments, as the health of the child is not relevant to the validity of the claim. *See Gallagher v. Duke Univ.* 852 F.2d 773, 776 (4th Cir. 1988); Tony Hartsoe, *Person or Thing-In Search of the Legal Status of a Fetus: A Survey of North Carolina Law,* 17 Campbell L. Rev. 169, 232 (1995) [hereinafter Hartsoe].

Furthermore, to allow a "wrongful conception" claim on the facts presented in this case is consistent with holdings from other states allowing causes of action against health care providers who fail to provide parents material information regarding the likelihood that their future children would be born defective, thus enabling the potential parents to decide whether to avoid the conception of such children. *See* 2 Stuart Speiser, *The American Law of Torts* § 9:27 (1985) [hereinafter Speiser]; *Harbeson v. Parke-Davis, Inc.*, 656 P.2d 483 (Wash. 1983); *Moores v. Lucas*, 405 So. 2d 1022, 1026 (Fla. Dist. Ct. App. 1981) (duty to warn potential parents of inheritable diseases); Hartsoe, at 217 (where a physician has duty to provide care and counseling with regard to reproductive functioning, failure to diagnose genetic defects prior to conception supports the claim for wrongful conception in North Carolina); *Gallagher v. Duke Univ.*, 638 F. Supp. 979, 980 (M.D.N.C. 1986) (holding that a "cause of action . . . must exist in North Carolina when . . . a health care provider negligently provides [genetic] counseling and information which induces a couple to conceive a defective child") *rev'd in part on other grounds*, 852 F.2d 773 (4th Cir. 1988).

[2] Having determined that the plaintiffs have asserted a valid claim for "wrongful conception," we address the issue of damages. The *Jackson* Court was specific in holding that the plaintiffs were entitled to recover "expenses associated with [the] pregnancy" and damages for any "emotional distress causally resulting from" the wrongful conception. 318 N.C. 172, 182-83, 347 S.E.2d 743, 750. Expenses associated with the pregnancy include medical expenses, pain and suffering, and lost wages for a reasonable period. *Id.* at 183, 347 S.E.2d at 750. The Court held that the plaintiffs were not entitled to recover the "costs of rearing their child," *id.* at 182, 347 S.E.2d at 749, relying on *Azzolino* and the Virginia case of *Miller*, 343 S.E.2d at 305. In *Miller* the facts reveal a healthy child born after a failed abortion effort by a physician. *Id.* In *Azzolino* the Court determined that the injury claimed was the birth of the child and that no damages could flow from the birth of a child, even one with impairments. 315 N.C. at 111, 337 S.E.2d at 534. In this case, we have an impaired child (thus

*Miller* is not applicable) and the injury claimed is the conception of a child with a genetic defect, not the birth (thus *Azzolino* does not apply). Accordingly we do not read *Jackson* as prohibiting the recovery of damages for the extraordinary care (in excess of the cost of raising a normal child) involved in the treatment of a child's abnormalities which were the foreseeable consequence of a physician's negligence in failing to inform the parents, prior to conception, of the possibility of such abnormalities. *See* Speiser § 9:27. These extraordinary expenses "naturally and proximately" flow from the injury in this case, the conception of a child with sickle cell disease. *See King v. Britt*, 267 N.C. 594, 597, 148 S.E.2d 594, 597 (1966) (plaintiff entitled to recover "all damages naturally and proximately resulting" from the defendant's tort).

## II

**[3]** To state a claim for negligent infliction of emotional distress, a plaintiff must allege that: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) the conduct did in fact cause the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (holding that plaintiff-parents stated a claim for negligent infliction of emotional distress where defendant-doctor caused death of unborn fetus). The allegations are sufficient to support the negligent infliction of emotional distress claim, as it was reasonably foreseeable that the defendant's failure to inform the plaintiffs of the blood test results would cause the plaintiffs severe emotional distress. The plaintiffs have alleged they sustained extreme emotional distress.

In summary, the trial court erred in dismissing the complaint and the case is remanded to allow the plaintiffs to proceed on a claim for "wrongful conception" and negligent infliction of emotional distress.

Reversed and remanded.

Judges WYNN and TIMMONS-GOODSON concur.